THEODORE ROOSEVELT, GOBERNADOR DE PUERTO RICO, y JAMES R. BEVERLEY, peticionarios, *v.* LA CORTE DE DISTRITO DE SAN JUAN, HON. ANGEL R. DE JESÚS, JUEZ, demandado.

No. 790.—*Sometido:* Agosto 20, 1931. *Resuelto:* Agosto 28, 1931.

*Hon. Attorney General James R. Beverley, A. Ortíz Toro* y *M. Rodríguez Serra, Primero* y *Segundo Procuradores Auxiliares,* respectivamente, abogados de los peticionarios; *Feliú & La Costa* y *E. Font Suárez,* abogados de los demandantes en el pleito principal; *Juan B. Soto,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El presente recurso de *certiorari* tiene por objeto anular una orden de la Corte de Distrito de San Juan restringiendo al Gobernador de Puerto Rico de poner en vigor la Ley número 99 de 1931 (Leyes de ese año, página 627).

 Esta orden fué obtenida al iniciarse el pleito en que los demandantes alegaban que algunos de ellos habían sido nombrados para desempeñar cargos municipales a virtud de las disposiciones de la Ley número 53 de 1928, y que tenían derecho a percibir sueldos y emolumentos y a continuar en esos cargos hasta el 9 de enero de 1933; que ellos o algunos de ellos eran electores, residentes y contribuyentes; que la legislatura aprobó la Ley número 99 de 1931 que es nula; que los demandantes sufrirían la imposición de contribuciones ilegales; que estarían sujetos a una multiplicidad de procedimientos y sufrirían daños irreparables; que carecían de cualquier otro remedio en el curso ordinario de

la ley, y que el procedimiento así instado era el único remedio a su alcance. Se solicitó se decretara que la ley en cuestión es inconstitucional y nula; y que en su consecuencia los demandados estaban en el deber de no hacer ciertos nombramientos consignados en la aludida ley, y que éstos debían abstenerse de hacerlos.

El gobierno sostiene que se trataba necesariamente de un pleito de *injunction*. Los interventores, demandantes en la corte inferior, mantienen que la demanda no es una de *injunction*, sino una en que se exige del gobernador el cumplimiento de una obligación de no hacer, o, en otras palabras, de no dar paso alguno bajo la ley, que los demandantes alegan es írrita y nula.

Si la ley autorizando los nombramientos de que se trata es constitucional, el derecho y el deber del Gobernador de hacerlos son claros. A menos que la ley autorizando esos nombramientos sea inconstitucional, no puede surgir deber alguno de abstenerse de hacerlos bajo el Código Civil, en equidad, o a virtud de la Ley Municipal general. Se presume que la ley de la legislatura es constitucional. A falta de una demostración *prima facie* lo suficientemente fuerte para controvertir esa presunción, ningún tribunal debe tratar de atar las manos del Gobernador, bien permanentemente o *pendente lite*.

Una acción para compeler mediante *injunction*, ya sea mandatorio o prohibitivo, el cumplimiento de un alegado deber de no hacer los nombramientos, es un pleito de *injunction*. Ni el nombre que dan los demandantes a la moción interesando un remedio provisional, ni el nombre de la orden concediendo la medida solicitada, son importantes. "Una rosa no sufre menoscabo en su perfume porque se le llame de otro modo." Ni un *injunction* preliminar como tal, ni una orden de la índole de un *injunction* provisional, aunque a guisa de una medida para asegurar la efectividad de una posible sentencia, deben expedirse desde luego a instancia de cualquier litigante. Ni el uno ni la otra deben concederse a menos que

el juzgador esté previamente convencido de que los demandantes han suscitado alguna cuestión constitucional seria, y que el resultado probable de su pleito será un fallo a su favor.

El *certiorari*, según lo define la sección 1349 de los Estatutos Revisados, es "un auto expedido por un tribunal superior a otro inferior, por el cual se exige del último la remisión al primero, de una copia certificada de las diligencias pendientes . . . en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley . . ." El inciso (*h*) de la sección 2 de la "Ley para asegurar la efectividad de sentencias," (Estatutos Revisados, 5234) dispone que (bastardillas nuestras): "En lo no previsto en las reglas precedentes, el tribunal *discrecional y equitativamente adoptará las medidas procedentes* para asegurar la efectividad de la sentencia." Podría admitirse de paso (aunque no debe entenderse que así lo resolvemos) que los demandantes en un pleito de *injunction* pueden solicitar y obtener una orden bajo este inciso o al amparo del inciso (*d*) de la misma sección. La concesión de un remedio en equidad de la naturaleza de un *injunction* provisional, bajo cualquiera de estos incisos, como cuestión de derecho, sin el ejercicio de cautela o discreción judicial alguna, es un error de procedimiento.

En el caso de autos el juez de distrito no consideró los méritos de las cuestiones constitucionales envueltas. El no se sintió en libertad de poner a prueba los fundamentos sobre los cuales los demandantes basaron sus alegaciones de inconstitucionalidad, sino que creyó que los demandantes tenían derecho, como materia de ley, al remedio provisional solicitado, y que él no tenía discreción alguna en cuanto a conceder o denegar tal remedio. Este criterio erróneo respecto a su poder y facultad resultó en un error de procedimiento. El no ejerció discreción alguna, ya fuera sana o judicial.

Las cuestiones relativas a la jurisdicción de esta corte, según han sido presentadas por los interventores, no requieren amplia discusión.

Al señalar un caso una corte no agota su facultad de fijar un día para la vista, sino que puede posponerla o anticiparla en cualquier momento.

No nos detendremos a considerar la facultad de la Legislatura para fijar términos del tribunal o para autorizar al Gobernador para que convoque a sesiones extraordinarias. Si·el Gobernador careciera de facultad para convocar a una sesión especial, entonces surgiría la cuestión de si los jueces no pueden actuar a voluntad propia y de si tal actuación sería un ejercicio válido del poder judicial. La corte misma no se queja de que se haya invadido su poder judicial.

Los motivos para llamar a sesión especial fueron, a nuestro juicio, suficientemente consignados en la convocatoria. De todos modos, la mayoría del tribunal, tal como está constituído en la actualidad, es de opinión de que la convocatoria anterior confirió toda la autoridad necesaria para resolver el presente recurso. No se ha cerrado formalmente la primera sesión especial de la temporada.

Dos de los miembros de esta corte se hallan fuera de la Isla. Si se les hubiese citado por cable no hubieran podido llegar a tiempo para ninguna de las sesiones extraordinarias. Su presencia no se hubiese podido obtener sin larga demora que hubiera destruído el objeto de la sesión extraordinaria. La ley no exige cosas imposibles ni la realización de una cosa vana y fútil. La notificación hecha a la mayoría de los miembros de esta Corte, que se hallaban en la Isla, fué suficiente.

*La orden impugnada por los peticionarios debe ser revocada.*

Los Jueces Presidente Señor del Toro y Asociado Texidor no intervinieron.

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SR. WOLF

La opinión y sentencia que anteceden, hasta donde nos es dable hacerlo, resuelven el punto de que ninguna corte en un caso que necesariamente envuelva la inconstitucionalidad

de un estatuto, debe actuar para restringir a un demandado a menos que haya una fuerte demostración de tal inconstitucionalidad. Aparte del hecho de que en un pleito de *injunction* mi opinión cabal es que la ley de 1902 relativa a la efectividad de sentencias no tiene aplicación, estoy conforme con la opinión del tribunal. Sin embargo, si la ley impugnada no es inconstitucional, entonces no surge causa de acción alguna en los demandantes, y no puede expedirse orden prohibitiva de clase alguna. *Debile fundamentum fallit opus.* Asimismo, suponiendo que la ley sea inconstitucional, si los demandantes, cualesquiera que fuesen sus derechos, por otra parte no tenían causa de acción contra el Gobernador, entonces, de igual modo, no podía expedirse orden prohibitiva en este caso. Sostuvieron los demandantes, si no estoy equivocado, que la suficiencia de la demanda no podía ser investigada. Empero, si la falta de causa de acción inevitablemente daría al traste con la orden de aseguramiento, la discusión de aquélla no puede considerarse como *obiter dicta*. Originalmente, los demandantes insistieron en que no debía considerarse en este tribunal cuestión alguna de constitucionalidad. Los abogados del Gobierno igualmente creyeron que tal discusión era innecesaria, ya que sostenían que, atendidos los términos del estatuto de 1902, no podía librarse el aseguramiento. Mantengo, sin embargo, que, como la consideración de las cuestiones constitucionales podría poner término a toda la controversia, y el asunto estaba debidamente ante nosotros, llegó a ser mi deber escudriñar la demanda para determinar si procedía algún remedio contra la posible actuación del Gobernador. Una contestación negativa tendería a sacar este caso de las cortes más rápidamente, y probablemente otros casos.

Antes de terminar la vista del caso en algunas de sus varias etapas, las cuestiones constitucionales fueron discutidas hasta cierto punto por ambas partes. Según resuelve la opinión, la presunción de constitucionalidad está fuertemente a favor de un estatuto. Por tanto, era deber de los demandan-

tes controvertir esta presunción. Ellos no lo han hecho. Por el contrario, el estudio que me ha sido posible hacer me convence de que no se ha alegado fundamento alguno de inconstitucionalidad que pueda destruir la totalidad de la ley. Tal vez puedan prevalecer algunos motivos de nulidad, pero no militarían contra la constitucionalidad de la ley como un todo. Procederé a examinar los principales fundamentos alegados y discutidos contra la constitucionalidad de la ley.

Una de las principales cuestiones a que he prestado consideración es que la ley fué aprobada después del 15 de abril de 1931, mientras que por virtud de nuestra Carta Orgánica la sesión legislativa debió haber terminado en dicho día. La ley, sin embargo, ha sido "enrolada" y certificada por el Presidente del Senado y el de la Cámara de Representantes, e impresa en las leyes de Puerto Rico. Bajo esta situación, a menos que los demandantes puedan demostrar que el caso es distinto, una ley así "enrolada" no puede impugnarse. *Field* v. *Clark,* 143 U.S. 649, 700; *Chesapeake & Potomac Telephone Co.,* v. *Manning,* 186 U.S. 238, 245; *Flint* v. *Stone Tracy Co.,* 220 U.S. 107, 143; *Leser* v. *Garnett,* 258 U.S. 130, 137; y para un caso más directo que envuelve la terminación de la sesión en la fecha fijada por la Constitución, véase *Capito* v. *Topping,* 22 L.R.A. (N.S.) 1089, 64 S.E. 845.

La Ley No. 99 no es en sentido alguno una para obtener ingresos, según arguyen los demandantes. Cuando los ingresos son un incidente de la ley principal, el principio constitucional invocado no es aplicable. Tan sólo cuando el fin de la ley es claramente obtener rentas, es que el proyecto debe originarse en la Cámara de Representantes. La Legislatura, de conformidad con los artículos 29 y 37 de la Carta Orgánica, tiene poder para abolir o crear municipios, y puede otorgar todas las medidas o facultades necesarias para poner en vigor la ley. *Twin City Bank* v. *Nebeker,* 167 U.S. 196; *Millard* v. *Roberts,* 202 U.S. 429; *United States* v. *Norton,* 91 U.S. 566; *Northern Counties Invest. Trust* v.

*Sears,* 30 Oregon 388, 41 Pac. 931, 35 L.R.A. 188 y nota; *Rankin* v. *City of Henderson,* 7 S.W. 174. Es interesante notar también que la llamada Ley Foraker organizando un gobierno civil para Puerto Rico muy probablemente se originó en el Senado de los Estados Unidos.

Se presentaron varias objeciones al título de la ley. Cuando ha de crearse un municipio y hacia este hecho se llama la atención en el título, éste se convierte en un rótulo de lo que contiene la ley. Los actores mantuvieron que ciertas materias no fueron mencionadas en el título, pero la ley también contiene un gran número de otras que tampoco lo fueron. La conclusión a que he llegado, sostenido por los tribunales, es que si la contención de los demandantes hubiera de prevalecer, prácticamente habría que hacer mención en el título a todas las cláusulas de una ley. Como autoridades para este párrafo cito *Montclair* v. *Ramsdell,* 107 U.S. 147; *Louisiana* v. *Pilsbury,* 105 U.S. 278; *Carter County* v. *Sinton,* 120 U.S. 517, 526; *Blair* v. *Chicago,* 201 U.S. 400; *Rodríguez* v. *P.R. Ry. Lt. & P. Co.,* 30 D.P.R. 931.

Se alega bajo consideraciones similares que la ley fué enmendada a tal extremo que se convirtió prácticamente en un nuevo proyecto. Las autoridades son claras en el sentido de que cuando se substituye el anterior por un nuevo proyecto, si los cambios efectuados son germanos al título o al propósito del título, no se viola precepto constitucional alguno. Cito, por la aplicación que pudieran tener, los siguientes casos: *Wood* v. *City of Wheeling,* 102 S.E. 259; *Devock* v. *Moore,* 63 N.W. 424; *Threft* v. *Towers,* 95 Atl. 1064; *Attorney General ex rel Pack* v. *Barton,* 11 Mich. 367; *State ex rel McCaffery* v. *Mason,* 55 S.W. 636; *State ex rel Davis Atty. Gen.* v. *Cox,* 178 N.W. 913; *Southern R. Co.* v. *Memphis,* 41 L.R.A. (N.S.) 828, 838; *People ex rel Hart* v. *McElroy,* 40 N.W. 750; *Southern Ry. Co.* v. *Mitchell,* 37 So. 85.

Igualmente, también creo que se hizo una identificación suficiente del municipio de San Juan al referirse la ley a la

"Capital". Popularmente, San Juan es con frecuencia mencionado como la capital. Además, la Ley Orgánica dispone que la capital de Puerto Rico será la ciudad de San Juan, manteniéndose en ella el asiento del gobierno.

Respecto al derecho al voto, la Legislatura no está obligada a otorgar a los ciudadanos de un municipio el derecho inmediato a votar. El gobierno de los municipios está enteramente bajo el dominio de la Legislatura. En el caso de *Martínez Nadal* v. *Saldaña*, 38 D.P.R. 446, la cuestión envuelta era el derecho a votar para ciertos cargos como el de Comisionado Residente en Washington, en que este derecho estaba protegido por la Carta Orgánica. El pueblo tiene derecho a elegir sus senadores y representantes, y la legislatura así constituída se supone que exprese la voluntad del pueblo.

Aun asumiendo que la ley sea inconstitucional, los demandantes no me convencen de que el derecho que el Gobernador tiene a hacer nombramientos sea otra cosa que uno de carácter político, y la regla general es que las cortes no pueden intervenir en la discreción política. *Luther* v. *Borden,* 7 How. 1; *State of Georgia* v. *Stanton,* 6 Wall 50; *New Jersey* v. *Sargent,* 269 U.S. 328; *Taylor and Marshall* v. *Beckham* (No. 1) 178 U.S. 548, 557; *Pacific Telephone Co.* v. *Oregon,* 223 U.S. 118.

Como pleito de *injunction,* estoy inclinado al criterio de que, a virtud de la sección 4 de la ley de *injunctions,* no podría expedirse una orden prohibitiva contra el Gobernador.

Como hemos resuelto que el pleito es uno de *injunction,* se hace innecesario considerar ampliamente algunas de las cuestiones principales planteadas por las partes. Bajo el razonamiento contenido en los alegatos del Gobierno y el original del *amicus curiae,* me inclino fuertemente al criterio de que, aun considerando el presente como un pleito ordinario, no surgiría obligación alguna de no hacer. Asimismo, que excepto en pleitos de *injunction* la acción sería prematura. Lo que quiero decir es que desde cualquier aspecto que se

mire el caso, los demandantes no tienen relación o nexo alguno a su favor con el Gobernador en lo que se refiere al poder de éste para nombrar.

Estoy autorizado para decir que mis colegas no disienten necesariamente de la mayor parte de las consideraciones de esta opinión, pero creen que es poco aconsejable discutirlas todas en este recurso de *certiorari*.

Por las razones que anteceden, soy de opinión que la orden de la Corte de Distrito de San Juan de fecha 24 de julio, 1931, debe ser anulada.