West India Oil Co., (P. R.), peticionaria y apelada, *v.* Jesús Benítez Castaño, como Administrador, y Bolívar Pagán, como Tesorero de la Capital de Puerto Rico, demandados y apelantes.

Núm. 7312.—*Sometido:* Noviembre 18, 1936. *Resuelto:* Abril 15, 1937.

*J. Valldejuli Rodríguez,* abogado de los apelantes; *James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

El Juez Asociado Señor Córdova Dávila emitió la opinión del tribunal.

Por ordenanza número 37, de enero 7 de 1932, la Junta de Comisionados de la Capital impuso un arbitrio de ciento cincuenta dólares anuales por cada bomba instalada y/o funcionada dentro de la jurisdicción de la Capital para el expendio de gasolina. Por ordenanza número 122, de febrero 6 de 1933, varió dicho arbitrio a cuarenta dólares anuales por cada bomba instalada y funcionada en una vía pública, acera o plaza, y a veinte dólares anuales por cada bomba instalada dentro de terreno público o privado. Por ordenanza número 130, de abril 3 de 1933, impuso tipos iguales a los establecidos por cada bomba en la ordenanza número 122, derogando esta última. Finalmente, por ordenanza número 144, de junio 6 de 1933, impuso un arbitrio idéntico al impuesto en la referida ordenanza número 122.

El Tesorero de la Capital, con la aprobación del Administrador de la misma, notificó a la peticionaria que debía pagar una suma alzada de $9,800 antes del 21 de diciembre de 1935, por concepto de los arbitrios impuestos en las referidas ordenanzas, amenazándola con embargar su propiedad en caso de no ser satisfechos dichos arbitrios antes de la mencionada fecha.

La peticionaria solicitó de la Corte de Distrito de San Juan la expedición de una orden de *injunction* permanente, prohibiendo a los demandados realizar acto alguno tendente al cobro de los mencionados tributos y embargar y vender en pública subasta para el cobro de los mismos, propiedad alguna de la referida peticionaria.

En la solicitud se alega que los demandados pretenden cobrar ''patentes'' por bombas que nunca han sido ni son poseídas, funcionadas o controladas por dicha peticionaria en su negocio de vender gasolina y aceite, pues intentan cobrar los referidos arbitrios sobre veintisiete bombas de gasolina y dos de aceite, cuando la peticionaria sólo ha poseído y funcionado durante los años fiscales de 1932–1933 hasta

1934–35, veintidós bombas durante el año terminado en junio 30 de 1932; veintiuna bombas durante el año terminado en junio 30 de 1933; quince bombas durante el año terminado en junio 30 de 1934, y catorce bombas durante el año terminado en junio 30 de 1935.

Accediendo a lo solicitado, la Corte de Distrito de San Juan expidió una orden para mostrar causa, ordenando a los demandados abstenerse de cobrar los arbitrios en cuestión, en el ínterin se realizaba la mencionada comparecencia. Solicitan los demandados la desestimación de la petición de *injunction*, alegando sustancialmente que la peticionaria tiene un recurso en ley, adecuado y eficaz. Conjuntamente con esta moción los referidos demandados radicaron una excepción previa de falta de causa de acción. Sometidas estas cuestiones por alegatos, la corte de distrito declaró ambas sin lugar y expidió una orden de *injunction* preliminar ordenando a los demandados que en el ínterin se resolviese la procedencia o improcedencia del *injunction* permanente, se abstuviesen de realizar acto alguno tendente a efectuar el cobro de dichas contribuciones y de embargar propiedad alguna de la peticionaria.

La corte inferior expidió el auto preliminar de *injunction*, basándose únicamente en que se trata de cobrar a la demandante, de acuerdo con las alegaciones, una contribución o impuesto sobre un número de bombas que la misma no posee ni ha poseído durante los años fiscales especificados en la demanda.

██ Para resolver la cuestión que sirvió de base a la resolución de la corte inferior, es innecesario acudir a la Ley núm. 99 de 1931 (pág. 627) según fué enmendada en 4 de mayo de 1933 (Leyes de 1932–1933, pág. 255). Autoriza esta ley, en su artículo 32 a, una acción ordinaria para recobrar las contribuciones satisfechas bajo protesta y dispone que no se dará ningún otro recurso ni se expedirá auto alguno para impedir o demorar la recaudación. Basta aplicar los principios generales de derecho, sin necesidad de invocar los pre-

ceptos de la referida ley, para llegar a la conclusión de que la demandante no puede impedir por medio de un auto de *injunction* el cobro de la contribución, por la única razón aducida en la opinión del tribunal *a quo* en apoyo de su resolución, toda vez que no ha pagado u ofrecido pagar el importe de los arbitrios sobre el número de bombas que admite poseer.

La apelada trata de impedir el cobro de ciertos arbitrios por el funcionamiento, dentro de la jurisdicción de la Capital, de un número determinado de bombas, parte de las cuales posee, alegando que los demandados tratan de cobrarle "patentes" por bombas que nunca ha poseído, funcionado o controlado.

A juicio de la corte inferior, el cobro de tal contribución a la demandante sobre bombas que no posee equivale a privarla de su propiedad sin el debido procedimiento de ley, añadiendo que para tales casos el recurso de *injunction* ofrece un remedio adecuado, sin que sea óbice para ello la sección 32 *a* de la citada Ley núm. 99 de 1931.

No hay duda de que los tribunales de equidad pueden expedir autos de *injunction* para detener el cobro de las contribuciones cuando concurren circunstancias que justifican la actuación judicial. Los tribunales, sin embargo, no favorecen el ejercicio de la acción judicial a menos que sea necesario para proteger los derechos sustanciales de la parte que invoca la jurisdicción de equidad. El. auto de *injunction* debe expedirse en un caso claro cuando el daño a la parte querellante es realmente sustancial. Éstos son los principios generales de derecho en ausencia de una prohibición expresa de la ley. Cuando existe esta prohibición, los tribunales están obligados a darle efectividad a menos que concurra una de esas circunstancias excepcionales y extraordinarias que determinan y justifican la jurisdicción de equidad.

La peticionaria admite que es dueña y tiene instaladas dentro de la Capital de Puerto Rico, para el expendio de gasolina al detall, cierto número de bombas, pero alega que los demandados intentan imponer y cobrar patentes o arbi-

trios sobre un número mayor de bombas que las que en realidad posee, funciona o controla.

Éste es un caso en que, estrictamente hablando, no puede decirse que se trate de una tasación o valoración excesiva, sino más bien de la reclamación de un arbitrio sobre una propiedad que no pertenece al presunto contribuyente. En casos de contribución excesiva, los tribunales sostienen que para que el contribuyente pueda utilizar la jurisdicción de equidad, debe satisfacer u ofrecer el pago de la contribución, descartando el exceso de la misma. La equidad no impedirá el cobro de una contribución parte de la cual es legal y válida, a menos que se pague o se ofrezca el pago de dicha porción. Esta doctrina no se aplica cuando la tasación es completamente nula. 61 C. J. 1089; 16 L.R.A. (N. S.) 807, 811; L.R.A. 1916A 972, 979.

En el caso de *Bismarck Water Supply Co.* v. *Barnes*, L.R.A. 1916A 965, 971, la Corte Suprema de North Dakota se expresó así:

"El simple hecho de que la contribución del demandante pueda ser mayor de la de una mayoría de los contribuyentes en el estado, no le da derecho para acudir a una corte de equidad. Como se dijo por la Corte Suprema de los Estados Unidos en 'State R. Tax Cases', 92 U. S. 575, 614, 23 L. ed. 663, 674: 'Es una cosa muy beneficiosa para las corporaciones o los individuos cuyas contribuciones son muy crecidas, obtener un *injunction* preliminar con respecto a todas sus contribuciones, dilatar el litigio del caso por varios años, y entonces, si al final se decide que sólo una pequeña parte de la contribución debe ser no pagada, allanarse al pago del balance. Esto no es equidad. Es una violación directa del primer principio de la jurisdicción de equidad.'

"Al tiempo que esta acción fué comenzada, el demandado Barnes, como *sheriff* del Condado de Burleigh, se había apoderado de cierta propiedad perteneciente al demandante. Éste tenía entonces un remedio adecuado en ley, pagando las contribuciones bajo protesta y promoviendo demanda para recobrar el exceso ilegal. (Citas.)"

En el caso de *Sieffried* v. *Raymond*, 60 N. E. 868, 869, resuelto por la Corte Suprema de Illinois, se sostiene que una

corte de equidad debe conceder un remedio mediante *injunction* contra la imposición de una contribución sobre propiedad que está exenta de tributo y dice que en caso de que se trate de cobrar una contribución parte de la cual está exenta, la equidad impedirá el cobro de esta parte, si es posible distinguir la parte de la contribución que está exenta de la que no lo está. Añade la corte que en casos en que la contribución legal y la ilegal estén de tal modo mezcladas que no puedan ser distinguidas, debe decretarse el *injunction* sobre toda la propiedad.

La doctrina sentada por los tribunales no puede ser más equitativa. Ya se trate de una contribución excesiva o de un tributo impuesto sobre propiedad que no pertenece al presunto contribuyente, si parte de la contribución se adeuda legalmente, el deber de la persona afectada por el cobro de la contribución es pagar u ofrecer el pago de la contribución que adeuda, para colocarse en condiciones de utilizar la jurisdicción de equidad.

La peticionaria sostiene en su alegato que no puede determinarse exactamente qué parte de esos arbitrios que intenta cobrar el municipio se contraen a las bombas que en realidad de verdad ha poseído y funcionado. Arguye que el Colector Municipal intenta cobrar una suma alzada de $9,800 sin que pueda haber manera o forma alguna de determinar en este estado del procedimiento cómo es que se reparten o dividen los arbitrios de $9,800 sobre las distintas bombas de gasolina. No estamos conformes con este criterio. Claramente se alega en la demanda que se impone un arbitrio de $40 por año por permiso para el mantenimiento de cada bomba que ocupe total o parcialmente las vías públicas, aceras o plazas, y $20 por año por cada bomba instalada dentro de terreno público o privado.

La peticionaria sabe dónde es que tiene instaladas sus bombas y no ignora la cantidad que debe pagar sobre las que, según alega, le pertenecen. Bien pudo pagar u ofrecer el pago de este arbitrio y solicitar el *injunction* sobre los

arbitrios impuestos a las bombas que según alega no posee ni funciona o controla.

La propia demandante admite que de ser válidas las ordenanzas imponiendo los arbitrios que ahora se impugnan, éstos ascenderían a la suma de $1,850. Sin embargo, ni siquiera esta cantidad se ha satisfecho u ofrecido satisfacer, de acuerdo con las alegaciones de la demanda.

En cuanto a la validez de las ordenanzas impugnadas, nos dice la peticionaria en su alegato que no resulta claro si el tributo impuesto por las referidas ordenanzas constituye contribuciones sobre la propiedad o arbitrios. Alega que paga los siguientes impuestos y contribuciones para beneficio de la Capital de Puerto Rico:

(a) Contribuciones sobre la propiedad durante el año 1936 montante a 2.54 por ciento sobre el valor de las propiedades, incluyendo desde luego las bombas para el expendio de gasolina.

(b) Un arbitrio de $200 trimestrales por licencia para traficar en gasolina al por mayor.

(c) Un arbitrio de $5 a $15 trimestrales por licencia por el negocio de venta de gasolina al detall sobre cada una de las estaciones de servicio o establecimientos en que se encuentran instaladas las referidas bombas, montando este arbitrio a $200 al año.

Arguye la peticionaria que si los tributos impuestos se consideran como contribuciones sobre la propiedad, son anticonstitucionales por varios fundamentos, entre ellos por falta de uniformidad, porque imponen un recargo que excede del 2 por ciento de la valoración de la propiedad radicada dentro de la capital, porque son confiscatorios y porque imponen una doble contribución.

A nuestro juicio, aunque dichas ordenanzas establecen como base para computar los referidos tributos el pago de una cantidad fija por cada bomba para el expendio de gasolina o aceite que funcione dentro de la Capital, dichos tributos

se cobran por el permiso de funcionar las referidas bombas, constituyendo claramente arbitrios por concepto de licencias.

La diferencia entre lo que constituye un arbitrio y una contribución sobre la propiedad ha sido claramente establecida por los tribunales. La Corte Suprema de Estados Unidos ha sugerido, por ejemplo, los siguientes puntos de vista:

"Un arbitrio y una contribución sobre la propiedad, cuando ambos se asemejan, de ordinario pueden ser distinguidos por los respectivos métodos adoptados para fijarlos y para determinar su cuantía. Si la contribución se impone directamente por la legislatura sin tasación alguna, y su importe se determina por los negocios realizados o por el punto hasta el cual se han disfrutado o ejercido por el contribuyente los privilegios conferidos, independientemente de la naturaleza o valor del activo del contribuyente, el tributo será considerado como un arbitrio, más si la contribución se computa sobre la base del valor de la propiedad y se fija por tasadores, en el lugar en que la misma está ubicada o en el domicilio del dueño, aunque se incluyan privilegios en la valoración, la misma será considerada como una contribución sobre la propiedad." *Saving* v. *Coit,* 6 Wall. (U. S.) 594; 18 L. ed. 897.

La Corte Suprema de California se ha expresado del modo siguiente:

"En términos generales, el objeto de una contribución sobre la propiedad es obtener rentas. Tal contribución no impone ninguna condición ni fija restricción alguna sobre el uso de la propiedad así tributada. Una contribución de privilegio, aunque sea aprobada con el fin de obtener rentas y que como tal ha de ser distinguida de la contribución por licencia, o del cargo reglamentario impuesto en armonía con el poder público del estado, se fija sobre el derecho a ejercer un privilegio, y su pago se hace invariablemente una condición precedente al ejercicio del privilegio envuelto." *Ingels* v. *Riley* (Cal. 2) 53 Pac. (2) 939.

En *McKenney* v. *Alexandria,* 147 Va. 157, 136 S. E. 588, se resolvió que una ordenanza municipal en la que se dispone que toda persona que venda gasolina por medio de una bomba (*curb pump*) situada ya en la vía pública o en una propiedad privada, pagará la cantidad de $25 por cada gasómetro

(*discharge standard*), no impone una contribución sobre dicho artículo sino un arbitrio por el privilegio de llevar a cabo el referido negocio.

No siendo los tributos impuestos por las ordenanzas impugnadas contribuciones sobre la propiedad, sino arbitrios, las razones aducidas por la apelada para sostener que dichas ordenanzas son inconstitucionales no necesitan ser consideradas.

La apelada alega, además, que asumiendo que dichos tributos son arbitrios, los mismos son ilegales y nulos, entre otras razones, porque las referidas bombas de gasolina son un elemento necesario del negocio de venta y distribución de gasolina y los tributos impuestos por dichas ordenanzas constituyen una doble tributación, porque a la peticionaria se le impone y cobra por el Gobierno Insular un arbitrio de 7 centavos por galón de gasolina que venda o importe (Ley núm. 40 de 24 de abril de 1931, pág. 361); un arbitrio por el privilegio de dedicarse al negocio de vender gasolina al por mayor; y otro arbitrio por el privilegio de dedicarse a vender gasolina al detall (Ley núm. 17, aprobada en 3 de junio de 1927, pág. 459). Alega también que dichos arbitrios son ilegales y nulos porque privan a la apelada de la igual protección de las leyes y se establece un discrimen en contra de ella, que utiliza bombas de gasolina en su negocio mientras quedan libres del tributo aquellas personas y entidades que expenden gasolina sin usar bombas para ello; porque las ordenanzas que los imponen proveen que es el Tesorero de la Capital el llamado a determinar quién será la persona sujeta al pago de la contribución o arbitrio y tal delegación de poder al mencionado Tesorero es ilegal e inconstitucional.

Es claro que el elemento sobre el cual se fijan los tributos en cuestión no es una parte necesaria del negocio de venta de gasolina en general, que puede venderse en otras formas que no sea por medio de bombas. La contribución debe ser sostenida cuando el elemento sobre el cual se fija la contribución adicional no es parte necesaria o usual del negocio en

general. *Sucs. de C. y J. Fantauzzi* v. *Asamblea Municipal de Arroyo,* 295 F. 803; *Fajardo Development Co.* v. *Camacho,* 35 D.P.R. 355.

Las alegaciones contenidas en la demanda sobre este particular no justifican la expedición de un auto preliminar de *injunction.* Para conceder este remedio no solamente deben existir todos los elementos y requisitos de un caso que caiga dentro de la jurisdicción de la corte, sino que de acuerdo con la mayoría de las decisiones no debe haber duda en la mente judicial de que la contribución o el método adoptado para su efectividad resultan claramente inconstitucionales. Lewis & Spelling "Law of Injunction", 421.

La inconstitucionalidad de la ley debe ser clara para que esté justificada la acción judicial impidiendo el cobro de las contribuciones.

De las alegaciones de la demanda no surge claramente la inconstitucionalidad de las ordenanzas, que no se acompañan a la misma, ni tampoco estamos en condiciones de decir que se trata de un caso de doble tributación prohibido por la ley.

■■ Alegan los apelantes que la corte inferior erró al declarar sin lugar la moción solicitando la desestimación de la petición de *injunction,* toda vez que la sección 32 a de la ley de 1931 confiere al contribuyente un remedio legal, eficaz y adecuado, de pago bajo protesta y acción ordinaria para recobrar las contribuciones así pagadas.

Sostiene la peticionaria que dicho precepto legal no confiere un remedio legal adecuado, porque no provee el pago de intereses al contribuyente sobre la cantidad satisfecha bajo protesta, en caso de que la contribución resulte ilegal, y porque sólo concede al contribuyente una reclamación preferente y no un derecho claro y absoluto a reintegro, pues aunque dispone que la cantidad pagada bajo protesta debe ser reintegrada, no contiene una disposición mandatoria obligando al Tesorero al reintegro inmediato, y porque además dicho procedimiento expone al contribuyente a una multiplicidad de litigios.

Convenimos en que la mencionada sección 32 *a* no dispone pago de interés alguno.

Esta corte ha sostenido que en una acción para recobrar contribuciones pagadas bajo protesta, el contribuyente no puede recobrar intereses a menos que se autorice expresamente. *The Union Central Life Ins. Co.* v. *Gromer, Tesorero,* 20 D.P.R. 86, 88. De acuerdo con el criterio adoptado por este tribunal, el contribuyente que satisfaga contribución al Gobierno de la Capital bajo protesta y demande en cobro de las referidas contribuciones, no podrá recobrar intereses sobre la cantidad así pagada, porque no hay ley que autorice dicho pago.

Ahora bien, el hecho de que no se disponga por la sección 32, ni por ninguna otra ley, el pago de intereses al contribuyente sobre la cantidad satisfecha bajo protesta por concepto de contribuciones adeudadas al Gobierno de la Capital, ¿es motivo bastante para que se expida un auto de *injunction* impidiendo el pago de la contribución?

No fué hasta el año 1926 que se impugnó en Estados Unidos el procedimiento de pago bajo protesta como inadecuado si no se disponía el pago de intereses. 42 "Harvard Law Review", 435. La cuestión fué planteada ante esta Corte Suprema por primera vez en el caso de *Texas Co. (P. R.)* v. *Junta de Comisionados,* 49 D.P.R. 934. En dicho caso, al impugnar la constitucionalidad de una de las ordenanzas envueltas en el presente caso (Ordenanza núm. 144, de 6 de junio de 1933), en un recurso de *certiorari* incoado ante la Corte de Distrito de San Juan, la peticionaria alegó como fundamento de su petición que el remedio de pago bajo protesta que establece la sección 32 *a* no es un remedio legal eficaz y adecuado que impida al contribuyente el uso del *certiorari* que provee la sección 46 de la antes mencionada Ley núm. 99 de 1931. Por voz del Juez Travieso, este tribunal hizo el siguiente análisis de la jurisprudencia federal existente sobre el particular:

"Aporta el apelante, como columna sostenedora de su contención de que el remedio legal que concede la sección 32 *a* es inadecuado y que por eso tiene derecho al recurso de *certiorari,* el caso de *Procter & Gamble Distributing Co.* v. *Sherman,* 2 F. (2) 165. En este caso, el demandante acudió ante la Corte de Distrito de los Estados Unidos en Nueva York, como Corte de Equidad, en solicitud de un auto de *injunction,* que es un remedio de equidad, para prohibir a las autoridades de aquel estado que le cobrasen a la corporación demandante ciertas contribuciones. Se pidió por el demandado la desestimación de la demanda por insuficiencia de sus alegaciones. La corte sostuvo que la demanda era suficiente y que el demandante tenía derecho a recurrir a la jurisdicción de Equidad, porque en su opinión la ley del Estado de New York envuelta en el caso no ofrecía al demandante un remedio legal adecuado, por los motivos: (1) la frase 'may be refunded to such corporation,' *podrá ser reintegrada a dicha corporación,* es ambigua y deja en duda si el contribuyente podría obligar a que se hiciese el reintegro, en caso de que las autoridades se negasen a hacerlo; y (*b*) porque el estatuto en cuestion rehusa expresamente conceder intereses sobre el importe reintegrado.

"En el caso de *Southern California Telephone Co.* v. *Hopkins,* 13 F. (2d) 814, la demandante acudió también a una Corte de Equidad en solicitud de *injunction,* para impedir el embargo y la venta de aparatos telefónicos, con el fin de hacer efectiva una contribución local, que la demandante consideraba ilegal por ser una contribución doble, prohibida por las leyes de California. El demandado pidió la desestimación de la demanda de equidad, alegando que el demandante tenía un remedio legal adecuado, consistente en pagar la contribución y demandar su devolución. La demandante replicó que el remedio legal que le concede el estatuto de California no es adecuado porque obligaría a la demandante a incoar una multiplicidad de pleitos, y además, porque la demandante no podría recobrar intereses sobre la suma que le fuera reintegrada. La Corte de Distrito de California desestimó la demanda. Apelada la sentencia, la Corte de Circuito del Noveno Circuito, siguiendo el precedente establecido por el caso de *Procter* v. *Gamble,* supra, revocó el fallo de la corte inferior y decretó el *injunction* solicitado, por entender que el remedio legal que el estatuto de California ofrecía al demandante no era adecuado. Apelado el caso ante el Tribunal Supremo de los Estados Unidos, éste confirmó la sentencia y sostuvo que el remedio que daba el estatuto era inadecuado porque no disponía el pago de intereses sobre las cantidades pagadas bajo protesta, durante el tiempo necesario para obtener una sentencia; y que el remedio en equidad

era permisible. Véase *Hopkins* v. *Southern Cal. Tel. Co.*, 275 U. S. 399–400.''

Copiamos a continuación lo que dijo la Corte Suprema de Estados Unidos en el caso de *Hopkins* v.-*Southern Cal. Tel. Co.*, 275 U. S. 399, por nosotros citado:

''Los peticionarios mantienen que bajo los artículos 3804 y 3819 del Código Político de California, los demandados pudieron haber protegido sus derechos pagando la contribución y promoviendo una acción para recobrarla. Pero si estos dos artículos se aplican en circunstancias como las aquí presentadas, es cosa que no resulta cierta. El artículo 3819 concede un remedio al *dueño;* y *Warren* v. *San Francisco,* 150 Cal. 167, intima con énfasis que dicho artículo se aplica únicamente a los verdaderos dueños. Si el arrendatario que ha pagado las contribuciones sobre la propiedad del dueño puede recobrar bajo el artículo 3804 · también es dudoso. Los abogados difieren ampliamente con respecto al significado de estos artículos y las opiniones de la Corte del Estado no disipan la duda. En ninguno de los procedimientos autorizados por la ley puede el interés sobre pagos ser recobrado por el tiempo necesario hasta que se dicten las sentencias. El Condado y diez y seis municipalidades están interesados en las contribuciones demandadas y si los peticionarios hubiesen recibido pagos, sería de su incumbencia hacer una pronta distribución. Considerando todas las circunstancias, nosotros no encontramos un claro y adecuado remedio en ley. El procedimiento de equidad debe permitirse.''

Hemos transcrito el párrafo que antecede porque, como se verá, aunque en él se citan los intereses, no fué ésta la única razón que hizo justificable, a juicio del Tribunal Supremo, el remedio en equidad.

La peticionaria cita el caso de *Proctor* v. *Sherman,* 2 F. (2d) 165, donde se dice lo siguiente:

''Pero completamente independiente de tal duda, el remedio es inadecuado en virtud de la negativa expresa de permitir intereses. No es respuesta decir que no se concedan intereses contra el soberano. (Citas.) Lo adecuado del requisito del remedio legal no puede ser apreciado por los remedios que se tienen contra una persona que no puede ser alcanzada por autos judiciales (*who is exempt from all process*). Si ésta fuera la pauta, la suma principal podría ser con-

fiscada. Si bien es cierto que no se me ha citado ninguna decisión sobre la materia, me parece claro que no existe un remedio adecuado cuando se toma el dinero de otro como una condición para que pueda discutir judicialmente su derecho, simplemente para devolvérselo, no importa cuanto tiempo después, luego de establecer que nunca debió habérsele requerido de pago. Cualesquiera que hayan podido ser nuestras nociones arcaicas acerca de los intereses, en las comunidades financieras modernas un dólar hoy vale más que un dólar el año próximo, e ignorar el intervalo por no tener importancia, es colocarse en pugna con creencias bien establecidas acerca del valor. El presente uso de mi dinero es por sí mismo una cosa de valor, y si no adquiero compensación por su pérdida, mi remedio no constituye una reparación.''

Esta doctrina ha sido también sostenida en el caso de *Nutt v. Ellerbe,* 56 F. (2d) 1058, 1062.

La Corte Suprema de Oklahoma, en *Atchison, T. & S. F. Ry. Co.* v. *Eldredge,* 166 P. 1085, mantiene un criterio distinto. En este caso se alegó, entre otras cosas, la inconstitucionalidad del remedio concedido, por no disponerse compensación por daños, honorarios de abogado y uso del dinero. El referido tribunal sostuvo que estas impugnaciones carecían de mérito.

En el presente caso no es necesario resolver definitivamente la cuestión planteada, aunque aparece muy bien argumentada por los tribunales que sostienen que el remedio no es adecuado y que procede el *injunction* cuando no se conceden intereses. Decimos que no es necesario resolver definitivamente esta cuestión, porque la peticionaria no se ha colocado dentro de los principios de equidad para solicitar el auto de *injunction.* Cuando pague u ofrezca pagar lo que debe por las bombas de gasolina que posee según las alegaciones de la demanda, entonces podrá discutirse si está autorizada o no para solicitar la acción judicial por medio de un procedimiento de equidad. ''He who seeks equity, must do equity.'' Ésta es la regla aplicada por los tribunales en un caso de esta naturaleza.

También alega la peticionaria que la acción ordinaria no le ofrecería un remedio efectivo, adecuado y rápido, y seguro en ley, porque el estado de las finanzas del Gobierno de la Capital es de tal modo embarazoso que equivale prácticamente a un estado de insolvencia, no estando en posición dicho Gobierno de pagar sus cuentas corrientes a su vencimiento, motivo por el cual no podría recobrar los arbitrios que ilegalmente pretende cobrarle dicho Gobierno en caso de que sean más tarde declarados nulos. Se hacen además otras alegaciones específicas en apoyo de esta alegación general, y se alega que estas alegaciones han sido aceptadas por los demandados, quienes se limitaron a excepcionar la demanda por falta de hechos y a presentar la defensa de que no procedía el auto de *injunction* por existir un remedio ordinario concedido por la ley.

Sin detenernos a discutir los méritos de las alegaciones sobre la insolvencia del Gobierno de la Capital, no creemos que el auto de *injunction* preliminar deba expedirse para impedir el cobro de una contribución, por el hecho de que los demandados se hayan limitado a excepcionar la demanda. Si la cuestión previa hubiese sido desestimada, los demandados habrían tenido derecho a contestar la demanda. Afirmar que han aceptado la insolvencia del Municipio por el hecho de haber establecido una excepción, es muy aventurado, cuando se invoca la jurisdicción de la corte para un remedio en equidad, que tiene por objeto impedir el cobro de determinados arbitrios.

La Legislatura de Puerto Rico ha manifestado claramente su intención de que no se establezca recurso alguno para detener el cobro de las contribuciones en el Gobierno de la Capital.

Ésta es una precaución sabia y razonable que se adopta para la seguridad del Gobierno Municipal. Como dice la Corte Suprema de los Estados Unidos en *Tennessee* v. *Sneed,* 96 U. S. 69, no hay gobierno que pueda existir cuando se

permite que el cobro de sus contribuciones sea dilatado *by every litigious man or every embarrassing man to whom delay was more important than the payment of costs.*

En *Bismarck Water Supply Co.* v. *Barnes, supra,* se dijo lo siguiente:

"Se ha establecido como un amplio principio que en ningún caso el cobro de una contribución será impedido cuando no se demuestra un daño de carácter irreparable y este hecho debe aparecer de las alegaciones de la solicitud. High, Inj. 362; Ritter v. Patch, 12 Cal. 298. Si la contribución es legal en sí misma, y la propiedad sobre la cual se impone está sujeta a contribución, entonces no puede decirse que tal agravio pueda resultar de su cobro. Puede, financieramente, molestar al contribuyente, arrojar dudas en su título, y hasta ocasionar su quiebra, pero ¿constituyen éstas razones para la intervención de una corte de equidad? Seguramente no, o los poderes y procedimientos de tal corte encontrarían un amplio desarrollo. Es una cuestión indiferente para el interés público quién paga las contribuciones o de qué clase de propiedad se derivan. Pero es de la mayor importancia que las mismas sean pagadas rápidamente y con el menor costo posible al Tesoro público. Una parte no ocupa un campo muy equitativo cuando admite que el terreno de que es dueña está sujeto a contribución, que esto es justo y legal, pero que él utilizará el error o la negligencia de un funcionario como una excusa para dilatar o impedir el pago. El último artículo de propiedad personal sujeto a contribución perteneciente al hombre pobre puede ser incautado y vendido para el cobro de la contribución y los tribunales de equidad en muchos casos se abstendrán de intervenir; mientras que al hombre rico, con sus grandes extensiones de terreno y dinero para pagar a sus abogados, si se le permitiera beneficiarse de tales sutilezas y tecnicismos podría indefinidamente posponer el pago de su obligación, arrojando así una carga adicional en los contribuyentes cumplidores y colocando en situación embarazosa al Tesoro público."

Después de haber estudiado detenidamente las alegaciones de la demanda, hemos llegado a la conclusión de que *debe revocarse la resolución apelada y devolverse el caso a la corte inferior para procedimientos ulteriores no incompatibles con los términos de esta opinión.*

El Juez Presidente Señor del Toro no intervino.

EN MOCION DE RECONSIDERACION

Junio 15, 1937

ALEGACIONES—EXCEPCIONES PREVIAS—HECHOS QUE ADMITEN O ACEPTAN.—Por el hecho de haberse interpuesto excepción previa a una solicitud de *injunction* para detener el cobro de una contribución, no viene este tribunal obligado a aceptar como ciertas las concluciones de hecho establecidas en la petición declarando ilegal o inconstitucional la legislación que en ella se impugna, máxime cuando de las propias alegaciones surgen serias dudas acerca de la corrección del aserto en que la parte peticionaria se funda.

En un extenso alegato solicitando la reconsideración de la sentencia dictada en el presente caso, alega la peticionaria que no se siente obligada a pagar o a ofrecer el pago de los arbitrios sobre las bombas que admite poseer, como medio de ponerse en condiciones de obtener el remedio de *injunction,* toda vez que dicha peticionaria impugna la validez de todas las patentes o arbitrios impuestos.

Admite la peticionaria que es dueña de cierto número de bombas, que tiene instaladas dentro de la jurisdicción de la Capital de Puerto Rico, para el expendio de gasolina.

En virtud de la orden de *injunction* solicitada, se trata de impedir que los demandados apelantes cobren a la peticionaria una suma alzada de $9,800 en concepto de arbitrios, por el privilegio de instalar bombas de gasolina en terrenos públicos o privados dentro de la jurisdicción de la Capital. Como fundamento para la expedición de la orden de *injunction,* se alega principalmente que los demandados intentan imponer y cobrar patentes o arbitrios sobre un número mayor de bombas de las que en realidad posee, funciona o controla, que el remedio de pago bajo protesta es inadecuado, que las ordenanzas que imponen los arbitrios en cuestión son anticonstitucionales y que el Gobierno de la Capital se encuentra en estado de insolvencia.

Revocamos la orden preliminar de *injunction* dictada por la corte inferior, porque, a nuestro juicio, de las alegaciones de la demanda no surge claramente que las ordenanzas impugnadas sean inválidas y nulas, y porque si bien es cierto que se pretende cobrar arbitrios sobre bombas que según las

alegaciones la peticionaria no posee, también se intenta cobrar los mismos arbitrios por la instalación de bombas que la propia peticionaria admite poseer. A nuestro juicio, ya se trate de una contribución excesiva o de tributos impuestos sobre propiedad que el contribuyente no posee, el deber de la peticionaria era pagar u ofrecer el pago de los arbitrios que recaen sobre las bombas que ella misma admite poseer, a menos que se hubiese demostrado claramente la nulidad de las ordenanzas impugnadas. Si estas ordenanzas son válidas, la corte no puede impedir el cobro de los arbitrios impuestos sobre las bombas que el contribuyente admite haber poseído.

Hemos dicho que para que pueda detenerse el cobro de una contribución mediante un auto de *injunction,* cuando se alega que la legislación que la impone o el procedimiento para cobrarla es anticonstitucional, el contribuyente debe presentar un caso claro de inconstitucionalidad.

Esta regla aparece enunciada por los comentaristas Lewis & Spelling en su tratado "The Law of Injunction", en la forma que a continuación se expresa:

"Para que esté justificado un remedio de *injunction* contra una contribución, deben existir no solamente todos los otros elementos y prerequisitos de un caso dentro de la jurisdicción, sino que según se ha resuelto en la mayoría de las jurisdicciones, no debe haber duda en la mente judicial de que la contribución o el método adoptado para hacerla efectiva es anticonstitucional o ilegal por otras razones. Esto equivale a decir (aplicando en una nueva forma la regla de que las cortes de equidad no intervendrán excepto cuando la ilegalidad de la contribución sea clara) que cuando existen serias dudas con respecto a la debida interpretación de la cual depende la validez de la contribución, el *injunction* debe ser denegado. Pero un *injunction* temporal algunas veces será concedido en tal caso condicionalmente, y en vista de circunstancias especiales, para impedir el cobro de la contribución hasta que la validez de la misma pueda ser determinada." Lewis & Spelling, sec. 200, págs. 421, 422.

Pero la parte apelada, pasando por alto los principios anteriormente enunciados, se pregunta: "¿Cómo va la peticionaria a pagar los arbitrios sobre las bombas que posee, si

precisamente su querella es que los mismos son ilegales y no posee un remedio adecuado en ley dentro del cual discutir y sostener su nulidad? ¿Cómo es lógico y, además de lógico, equitativo, obligar a este contribuyente a pagar los arbitrios a que nos referimos si esta misma corte no ha decidido la proposición por él levantada de que el remedio de pago bajo protesta no es adecuado, máxime cuando esta corte parece estar hondamente impresionada por las autoridades que deciden que el remedio ofrecido no es adecuado?''

Y preguntamos nosotros, ¿qué tiene que ver la existencia o inexistencia de una ley que prescriba un procedimiento adecuado con la cuestión resuelta? En la hipótesis de que la ley aprobada por la Asamblea Legislativa concediese el pago de intereses, la peticionaria tendría siempre derecho a que se le expidiese un auto de *injunction* para impedir el cobro de aquellos arbitrios impuestos sobre las bombas que no posee, a pesar de existir el remedio concedido por la ley. En cuanto a las bombas que posee, la alegada invalidez de la ordenanza debe ser clara, para que pueda decretarse el paro en el cobro del arbitrio, tanto si existe dicho remedio como si no hubiese hallado cabida nunca en nuestros estatutos. Sostener lo contrario equivaldría a ignorar los principios reconocidos por la jurisprudencia, dejando a la parte contra quien se solicita la orden de *injunction* a merced de las alegaciones que tenga a bien establecer la peticionaria. No basta con que se establezca en la solicitud la conclusión de que una ley o una ordenanza es inválida. Es necesario, además, que surja claramente la invalidez, para que una corte de equidad esté justificada en decretar una orden de *injunction* impidiendo el cobro de una contribución.

En toda demanda es necesario alegar una causa de acción. En una solicitud de *injunction,* esta causa de acción debe ser completamente clara, sin dejar dudas en la mente judicial, cuando se alega la anticonstitucionalidad de una legislación y se persigue el propósito de impedir el cobro de un arbitrio o contribución. Y esta claridad no surge en el presente caso.

Nada más lejos de nuestro ánimo que tratar de prejuzgar la cuestión planteada, que no ha sido resuelta por la corte inferior. Como dijimos en nuestra opinión, el auto preliminar de *injunction* expedido se basó únicamente en haberse tratado de cobrar a la demandante una contribución impuesta sobre un número de bombas que no posee. Deseamos añadir que no existen en este caso circunstancias especiales para impedir el pago de la contribución y por esta razón creemos que debemos sostener nuestro fallo revocando la resolución apelada.

Alega la peticionaria que toda su causa de acción estriba en el hecho de que "siendo las bombas parte indispensable de su negocio, las mismas no pueden ser impuestas por estar ya gravado el negocio, tanto por el Gobierno Insular como por el Gobierno Municipal." Afirma que en la petición jurada alegó que "las referidas bombas de gasolina son elementos necesarios del negocio de venta y distribución de gasolina" y que los demandados admitieron dicha alegación a virtud de una excepción previa. Es decir, que por el hecho de que los demandados hayan interpuesto una excepción previa a la solicitud, nosotros debemos estar obligados a aceptar como ciertas las conclusiones de hecho establecidas por la peticionaria, declarando ilegal la legislación impugnada. La conclusión de la peticionaria no puede obligarnos, sobre todo cuando de sus propias alegaciones surgen serias dudas acerca de la corrección de este aserto en que tanto énfasis ha puesto la parte apelada. La misma peticionaria no parece estar de acuerdo con su afirmación de que las bombas son parte indispensable de su negocio, cuando en la demanda alega que "con dichos tributos se priva a la peticionaria de la igual protección de las leyes y se establece un discrimen en contra de la peticionaria, que utiliza bombas de gasolina en su negocio, mientras quedan libres del tributo aquellas personas y entidades que expenden gasolina sin usar bombas para ello." A juzgar por estas alegaciones las bombas son un

elemento indispensable para la venta de gasolina cuando esa venta la lleva a cabo la peticionaria; pero no lo son para otras personas y entidades que según la demanda expenden gasolina sin usar bombas para ello.

También nos dice la peticionaria que si en definitiva se declarase la existencia de una doble tributación, resultaría lesionada en sus derechos, porque el Municipio es insolvente y no podría recobrar la suma satisfecha. Asumiendo que esta conclusión sea correcta, también podríamos decir que la municipalidad de San Juan se vería privada de cobrar oportunamente los arbitrios, en caso de que la ordenanza fuese declarada válida. Es por esta razón que la peticionaria no debe tener derecho a detener el cobro de una contribución o arbitrio, sin establecer claramente la anticonstitucionalidad de la ordenanza. Toda la jurisprudencia está conforme en que el paro del cobro de una contribución es una cuestión seria que debe ser cuidadosamente estudiada por los tribunales antes de decidirse a decretarlo, sobre todo cuando aparte de lo indecuado del remedio no puede negarse que la Asamblea Legislativa ha declarado de una manera expresa y categórica que no debe detenerse mediante *injunction* el cobro de una contribución.

*No ha lugar a la reconsideración solicitada.*