GARCÍA HERMANOS, INC., peticionaria y apelante, *v.* R. JIMÉNEZ SOTO, Colector de Rentas Internas de Bayamón y HON. RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, demandados y apelados.

Núm. 8965.—*Sometido:* Diciembre 20, 1944. *Resuelto:* Enero 30, 1945.

*Edelmiro Martínez Rivera,* abogado de la apelante; *Hon. Procurador General Interino Jesús A. González* y *M. Velázquez Flores* y *A. D. Marchand Paz, Procuradores Generales Auxiliares,* abogados de los apelados.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

En octubre 14, 1941 el Colector de Rentas Internas de Bayamón embargó a la corporación apelante materiales de construcción valorados en $127,000, para hacer efectivos ciertos arbitrios, recargos y costas que alegó habían sido devengados bajo la Ley núm. 85 de 20 de agosto de 1925 (pág. 585) y que ascendían a la suma de $35,902.66.

En la petición de *injunction* radicada en la Corte de Distrito de Bayamón se alegó que la cantidad que los demandados tratan de cobrar a la demandante es por concepto del impuesto de 2 por ciento sobre el total de las ventas de materiales hechas por la peticionaria a distintos departamentos y divisiones del Gobierno Federal, del Gobierno Insular y de ciertos municipios de la Isla con anterioridad al 11 de julio de 1941; que en la fecha en que se realizaron dichas ventas, los propios demandados consideraron que las mismas estaban exentas de pago, de acuerdo con una circular expedida por el Departamento de Hacienda; que todos los materiales así vendidos fueron empleados por el Gobierno Federal en obras de construcción en las bases navales aéreas en "Isla Grande", "Borinquen Field" y "Losey Field" y en los campamentos militares "Buchanan" y "Tortuguero"; que todos dichos materiales fueron vendidos sin que se incluyera en el precio de venta el importe de la contribución, por haber resuelto el Departamento de Hacienda que dichas ventas no estaban sujetas a su pago y, además, por haber alegado esa exención las agencias compradoras.

Entre otros fundamentos legales de la petición, se alegó que el embargo de los materiales es ilegal y nulo por haberse embargado una cantidad de bienes mayor que la estrictamente necesaria para cubrir el importe de las contribuciones reclamadas; y que si se permitiese la subasta de los materiales embargados, la peticionaria sufriría daños

irreparables y se vería privada de su propiedad sin el debido proceso de ley.

Solicitó la peticionaria la expedición de un auto de injunction para impedir la venta en pública subasta de los bienes embargados, alegando que dicha venta habría de causarle daños irreparables y que la peticionaria carece de otro remedio rápido y eficaz para evitar esos daños.

Expedida una "orden para mostrar causas y de entredicho", comparecieron los demandados y solicitaron la disolución del entredicho, alegando que la petición de injunction no aduce hechos suficientes para determinar una causa de acción; que la peticionaria tiene un recurso rápido y eficaz en el curso ordinario de la ley; y que el injunction no procede para impedir el cobro de una contribución establecida por la ley. Radicaron también los demandados una contestación negando específicamente los hechos esenciales de la demanda e interpusieron como defensas especiales la insuficiencia de los hechos alegados para constituir una causa de acción, la existencia de un remedio legal adecuado y la improcedencia del injunction para impedir la imposición y cobro de contribuciones establecidas por las leyes vigentes.

En diciembre 14 de 1942, las partes sometieron a la corte inferior para su decisión las cuestiones legales planteadas en las alegaciones. En abril 14 de 1944—después de una dilación inexplicable de un año y cuatro meses—la corte inferior dictó sentencia declarando sin lugar la petición y condenando a la peticionaria al pago de las costas. La peticionaria apeló.

En el primer señalamiento se alega que la corte sentenciadora erró al considerar la demanda como una dirigida a impedir el cobro de una contribución y al resolver por esa razón que el injunction no procedía.

El error en que incurrió el tribunal recurrido es evidente. Los hechos alegados y especialmente la súplica de la peti-

ción, demuestran claramente que la peticionaria recurrió al remedio de equidad, no con el propósito de que se prohibiera al Tesorero de Puerto Rico el cobro de las contribuciones por él reclamadas y sí con el propósito de que se protegiese a la peticionaria contra un embargo excesivo e ilegal, prohibiendo la venta en pública subasta de bienes que tenían un valor tres veces mayor que la suma reclamada por los demandados. La peticionaria alegó—y los demandados al excepcionar la demanda lo admitieron—que la suma reclamada por el Tesorero es la de $35,902.66 y que los materiales embargados y que habrían de ser vendidos en pública subasta valían $127,000.

Las decisiones de este tribunal [1] y las de las jurisdicciones estatales y federal, citadas por la corte inferior en apoyo de la bien establecida doctrina de que el injunction no procede cuando su objeto es impedir el cobro de contribuciones, salvo en casos verdaderamente excepcionales y extraordinarios, no son en verdad aplicables al caso de autos, pues no se trata aquí de impedir el cobro de una contribución y sí de prohibir que se realice la venta de bienes embargados, en contravención de las disposiciones estatutarias que autorizan al Tesorero de Puerto Rico para embargar y vender en pública subasta bienes pertenecientes a contribuyentes morosos.

En la opinión emitida por la corte inferior se dice que "el día 15 de diciembre de 1941 esta corte dictó una orden de entredicho en virtud de la cual fué paralizada la subasta y disuelto el embargo (vacated)". Empero, en el récord que tenemos a la vista no existe constancia alguna de que tal orden de entredicho fuera expedida. La única orden de entredicho que aparece en el récord es la expedida por el Juez E. Ponsa Parés en octubre 31 de 1941, por la cual se ordenó a los demandados que se abstuviesen de llevar a cabo la subasta anunciada para el 3 de noviembre de 1941. En dicha

---

[1] *Brenes* v. *Domenech, Tesorero,* 48 D.P.R. 565; *Roosevelt* v. *Corte,* 42 D.P.R. 836; *West India Oil Co.* v. *Benítez,* 51 D.P.R. 273.

orden nada se dice en cuanto a la anulación o disolución del embargo. Nos vemos, pues, obligados a considerar como un hecho admitido por las alegaciones, que aún cuando la subasta anunciada fué suspendida por virtud de la orden de entredicho, el embargo practicado en 14 de octubre de 1941 está aún en pie. Siendo ello así, si la sentencia recurrida fuere confirmada, los demandados estarían autorizados para proceder a vender en pública subasta los bienes embargados.

■■ El artículo 336 del Código Político autoriza al Tesorero y a los Colectores para embargar bienes muebles de cualquier contribuyente moroso y para venderlos en pública subasta, si el importe de las contribuciones no fuere satisfecho después de haber transcurrido los diez días siguientes al de la notificación del embargo. El artículo 337 del mismo Código dispone que la venta de los bienes muebles para el pago de contribuciones "se hará en pública subasta, vendiéndose la cantidad de ellos estrictamente necesaria para el pago de todas las contribuciones, penalidades y costas".

Consideramos como absolutamente irrazonable y contrario a la letra y al espíritu de la ley el alegado y admitido propósito de los demandados de ofrecer y vender en pública subasta propiedades muebles que están valoradas en una cantidad casi cuatro veces mayor que el importe de las contribuciones reclamadas. Una venta hecha bajo tales condiciones seguramente habría de causar serios e irreparables perjuicios a la peticionaria. El Tesorero puede sin duda alguna embargar bienes valorados en una suma razonablemente mayor que la cantidad por él reclamada, pero de esos bienes sólo puede vender la parte que sea estrictamente necesaria para el pago de las contribuciones, penalidades y costas. No está autorizado para embargar y vender bienes muebles en la forma en que pretendió hacerlo en el presente caso. Los hechos alegados en la petición y admitidos por la excepción, justificaban plenamente la expedición del injunction, no para prohibir a los demandados el cobro de las contribuciones por

el procedimiento de apremio y sí con el solo propósito de impedir el daño irreparable que habrá de causarle a la peticionaria la venta de sus bienes en la forma proyectada.

Tratándose de un embargo de carácter administrativo practicado por el Tesorero con el propósito de cobrar contribuciones por el procedimiento de apremio, sin la intervención de las cortes de justicia, la peticionaria carecía del remedio legal adecuado a que hubiera podido recurrir si se tratase de un embargo judicial o sea el de acudir ante el tribunal que hubiere decretado el embargo en solicitud de que el mismo fuese reducido. Esa circunstancia y el peligro inminente de que los bienes fuesen vendidos sumariamente en la subasta que ya había sido anunciada, eran suficientes para justificar la concesión de la orden de injunction *pendente lite.*

La sentencia recurrida fué dictada teniendo en cuenta solamente las alegaciones de la demanda, admitidas por la excepción previa, pero negadas en la contestación. La Corte, según hemos resuelto, erró al declarar con lugar la excepción previa y sin lugar la petición de injunction, pero pudiendo resultar que al entrar en los méritos del caso la peticionaria no pudiese substanciar sus alegaciones de hecho, *lo procedente es revocar la sentencia recurrida y devolver el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*