## LESER ET AL. *v.* GARNETT ET AL.

ERROR AND CERTIORARI TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 553.   Argued January 23, 24, 1922.—Decided February 27, 1922.

1. A suit by qualified voters of Maryland to require the Maryland Board of Registry to strike the names of women from the register of voters upon the grounds that the state constitution limits the suffrage to men and that the Nineteenth Amendment to the Federal Constitution was not validly adopted, is maintainable under the Maryland law and raises the question whether the Nineteenth Amendment has become part of the Constitution.   P. 136.
2. The objection that a great addition to the electorate, made without a State's ˙consent, destroys its political autonomy and therefore exceeds the amending power, applies no more to the Nineteenth Amendment than to the Fifteenth Amendment, which is valid beyond question.   P. 136.
3. The Fifteenth Amendment does not owe its validity to adoption as a war measure and acquiescence.   P. 136.
4. The function of a state legislature in passing on a proposed amendment to the Federal Constitution, is federal, and not subject to limitation by the people of the State.   P. 137.   *Hawke* v. *Smith,* 253 U. S. 221, 231.
5. Official notice from a state legislature to the Secretary of ˙State, duly authenticated, of its adoption of a proposed amendment to the Federal Constitution, is conclusive upon him, and, when · certified to by his proclamation, is conclusive upon the courts.   P. 137.   *Field* v. *Clark,* 143 U. S. 649, 672, 673.

139 Md. 46, affirmed.

CERTIORARI to a decree of the court below affirming a decision of the state trial court dismissing a petition by

which the plaintiffs in error sought to require the members of the Maryland Board. of Registry to strike the names of specified woman voters from the registration list.

*Mr. Thomas F. Cadwalader* and *Mr. William L. Marbury,* with whom *Mr. George Arnold Frick* was on the briefs, for plaintiffs in error and petitioners.

The only power to amend the Constitution is contained in Article V, and is a delegated power. *Hawke* v. *Smith,* 253 U. S. 221, 227; *Dodge* v. *Woolsey,* 18 How.. 348. It is a power to " amend," granted in general terms.

In a series of decisions rendered soon after the Civil War, this court established the doctrine propounded by Mr. Lincoln in his first inaugural address, that the Union was intended to be a perpetual Union,—" an indestructible Union of indestructible States,"—and that no power was conferred upon any of the agencies of government provided for in the instrument to defeat that intention,— that " great and leading intent " of the people, *Ex parte Yerger,* 8 Wall. 85, 101,—by destroying any of the States, by taking away in whole or in part any one of the " functions essential to their separate and independent existence " as States. *Lane County* v. *Oregon,* 7 Wall. 71; *Texas* v. *White,* 7 Wall. 700, 724–725. Obviously Article V must be so construed as not to defeat the main purpose of the Constitution itself.

A " State " within the meaning of the Constitution is not merely a piece of territory, or a mere collection of people. It is, as this court has said, " a political community." Who constitute the State in that sense? Clearly the people who exercise the political power. That is to say, the electorate and those whom the electors of a State choose to clothe with the governmental power of the State. When an amendment is adopted, therefore, which changes the electorate, the original State is destroyed and a new State created.

Questions of power do not depend upon degree. *Brown v. Maryland,* 12 Wheat. 419, 439; *Keller v. United States,* 213 U. S. 138, 148.

The power to amend is granted in no broader language than that in which the taxing power is granted in § 8, Art. I. Yet this court held, in *Collector v. Day,* 11 Wall. 113, that it would not construe that language, broad as it was, as sufficient to authorize Congress to levy a tax upon the salary of a state judge, for the same reason we urge here. If the power to maintain a judiciary whose salaries shall be exempt from taxation by Congress be one of the " functions essential to the existence " of a State of the Union, a power without which it would not be an indestructible State, surely the power to determine for itself, by the voice of its own voters, who shall and who shall not vote in the election of that judiciary is not less so.

It is argued that there is no provision in the Constitution forbidding the submission or the ratification of such an amendment. But even so, as said in *Collector v. Day,* exemption from such an amendment " rests upon necessary implication, and is upheld by the great law of self-preservation."

It may be argued, perhaps, that the fact that there are two express limitations upon the amending power contained in Article V indicates that that power was intended to be unlimited in other respects. It might be a sufficient answer to that contention to say that the maxim *expressio unius exclusio alterius,* while sometimes very persuasive, is never conclusive as a rule of interpretation, and that, before adopting it in so doubtful a matter as this, the courts would certainly look to the consequences which might follow such an interpretation. *Slaughter-House Cases,* 16 Wall. 36, 78. But perhaps a more conclusive answer will be found in the fact that the same argument was rejected as applied to the taxing clause. *Collector v. Day, supra; Evans v. Gore,* 253 U. S. 245.

The decision of this court in the *National Prohibition Cases,* 253 U. S. 350, constitutes no precedent for holding valid the Nineteenth Amendment. The Eighteenth Amendment did not attack or interfere with the government of the State—"the structure of the state government"—or deprive it of any function "essential to its separate and independent existence."

The prohibition against the adoption of any amendment whereby a State is deprived of its equal suffrage in the Senate without its consent involves two things—first, that if the State chooses to consent it may be deprived of its equal suffrage in the Senate; and, second, that it may not by any amendment be deprived of its power to give or refuse its consent.

It is easy to see that, if any interference with the electorate of a State be permitted, its power to refuse its consent to any amendment which may hereafter be proposed, including an amendment reducing the number of its Senators, may be taken away.

The consent of the State cannot be given or refused except by the will expressed either directly or indirectly of the State's own voters. Therefore it follows necessarily that the right of the State's own electorate to vote is a right reserved and withheld from the scope and operation of the amending power altogether. Hamilton, The Federalist, No. 59, pp. 238, 239.

The various cases decided by this court since the Civil War, including *Myers* v. *Anderson,* 238 U. S. 368, in which, without going at all into the question of the scope and limits of the amending power granted in Article V, this court nevertheless then recognized the Fifteenth Amendment as being in effect valid as a part of the Constitution, constitute no precedents for holding the Nineteenth Amendment valid, for the reason that any amendment, however radical, which has received the unanimous assent of the States—has been, in fact, consented to, how-

ever reluctantly, by each and all of them,—is valid, and must be accepted by this court as being valid when the question of its validity was raised for the first time, forty-five years after its adoption, no State nor any citizens of any State having ever disputed its validity prior to that case.

While it may be true that no formal treaty of peace was entered into by the Government of the United States and the Confederate States, or any of them, the substance of a treaty was enacted in the Thirteenth, Fourteenth, and Fifteenth Amendments. *Slaughter-House Cases*, 16 Wall. 36, 67, 71.

It may be true that this involves the contention that the effect of war and the necessity of taking measures to prevent the recurrence of war expands the amending power, but it is submitted that there is nothing unreasonable in that contention. The same effect would undoubtedly be produced by the same causes upon the treaty-making power.

If, after the expiration of a period of forty-five years, the validity of a treaty, by which this country made the best terms it could to end a disastrous war, were called in question as the validity of the Fifteenth Amendment was called in question for the first time in *Myers* v. *Anderson,* would not this court deal with the objections to its validity in the same way in which it dealt with the objections urged against the validity of the Fifteenth Amendment in that case, viz: ignore them altogether and decide all other questions raised with the tacit assumption that the treaty was valid?

After the Fifteenth Amendment had been proclaimed, the States which had refused ratification, and their people, evidenced their consent and acquiescence in the clearest possible way, by not only refraining from challenging its validity for forty-five years, but in passing laws either for the enforcement of the amendment or in recognition of its validity.

The Nineteenth Amendment₄ has never been legally ratified by the requisite number of States. Tennessee and West Virginia, both of which must be counted to make the requisite three-fourths, in fact refused to ratify the Amendment. The votes upon which the certifications were based were illegal under the local law. The proceedings are subject to judicial inquiry under that law, and by this court.

The legislatures of five States, Missouri, Tennessee, West Virginia, Texas and Rhode Island, were, by the provisions of their respective state constitutions, expressly forbidden to adopt amendments of the character of the Nineteenth, and were therefore incompetent to ratify that amendment.

*Mr. Alexander Armstrong,* Attorney General of the State of Maryland, with whom *Mr. Lindsay C. Spencer* was on the briefs, for defendants in error and respondents.

*Mr. George M. Brady,* with whom *Mr. Roger Howell* and *Mr. Jacob M. Moses* were on the brief, for Caroline Roberts et al., defendants in error and respondents.

*Mr. Solicitor General Beck,* by leave of court, filed a brief as *amicus curiae* on behalf of the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

On October 12, 1920, Cecilia Streett Waters and Mary D. Randolph, citizens of Maryland, applied for and were granted registration as qualified voters in Baltimore City. To have their names stricken from the list Oscar Leser and others brought this suit in the court of Common Pleas. The only ground of disqualification alleged was that the applicants for registration were women, whereas the constitution of Maryland limits the suffrage to men. Ratification of the proposed Amendment to the Federal

Constitution, now known as the Nineteenth, 41 Stat. 362, had been proclaimed on August 26, 1920, 41 Stat. 1823, pursuant to Rev. Stats., § 205.   The Legislature of Maryland had refused to ratify it.   The petitioners contended, on several grounds, that the Amendment had not become part of the Federal Constitution.   The trial court overruled the contentions and dismissed the petition.   Its judgment was affirmed by the Court of Appeals of the State, 139 Md. 46; and the case comes here on writ of error.   That writ must be dismissed; but the petition for a writ of certiorari, also duly filed, is granted.   The laws of Maryland authorized such a suit by a qualified voter against the Board of Registry.   Whether the Nineteenth Amendment has become part of the Federal Constitution is the question presented for decision.

The first contention is that the power of amendment conferred by the Federal Constitution and sought to be exercised does not extend to this Amendment, because of its character.   The argument is that so great an addition to the electorate, if made without the State's consent, destroys its autonomy as a political body.   This Amendment is in character and phraseology precisely similar to the Fifteenth.   For each the same method of adoption was pursued.   One cannot be valid and the other invalid. That the Fifteenth is valid, although rejected by six States including Maryland, has been recognized and acted on for half a century.   See *United States* v. *Reese,* 92 U. S. 214; *Neal* v. *Delaware,* 103 U. S. 370; *Guinn* v. *United States,* 238 U. S. 347; *Myers* v. *Anderson,* 238 U. S. 368.   The suggestion that the Fifteenth was incorporated in the Constitution, not in accordance with law, but practically as a war measure which has been validated by acquiescence, cannot be entertained.

The second contention is that in the constitutions of several of the thirty-six States named in the proclamation

of the Secretary of State there are provisions which render inoperative the alleged ratifications by their legislatures. The argument is that by reason of these specific provisions the legislatures were without power to ratify. But the function of a state legislature in ratifying a proposed amendment to the Federal Constitution, like the function of Congress in proposing the amendment, is a federal function derived from the Federal Constitution; and it transcends any limitations sought to be imposed by the people of a State. *Hawke* v. *Smith, No. 1,* 253 U. S. 221; *Hawke* v. *Smith, No. 2,* 253 U. S. 231; *National Prohibition Cases,* 253 U. S. 350, 386.

The remaining contention is that the ratifying resolutions of Tennessee and of West Virginia are inoperative, because adopted in violation of the rules of legislative procedure prevailing in the respective States. The question raised may have been rendered immaterial by the fact that since the proclamation the legislatures of two other States—Connecticut and Vermont—have adopted resolutions of ratification. But a broader answer should be given to the contention. The proclamation by the Secretary certified that from official documents on file in the Department of State it appeared that the proposed Amendment was ratified by the legislatures of thirty-six States, and that it " has become valid to all intents and purposes as a part of the Constitution of the United States." As the legislatures of Tennessee and of West Virginia had power to adopt the resolutions of ratification, official notice to the Secretary, duly authenticated, that they had done so was conclusive upon him, and, being certified to by his proclamation, is conclusive upon the courts. The rule declared in *Field* v. *Clark,* 143 U. S. 649, 669–673, is applicable here. See also *Harwood* v. *Wentworth,* 162 U. S. 547, 562.

*Affirmed.*