Edward J. TROMBETTA et al.,
Plaintiffs,

v.

The STATE OF FLORIDA, and Jerry
Thomas, as President of the Florida
Senate, Defendants.

No. 72-182-Civ. T-H.

United States District Court,
M. D. Florida, Tampa Division.

Jan. 29, 1973.

Richard H. Frank, Tampa, Fla., Frazier, Tiballi & Schroeder, Fort Lauderdale, Fla., for plaintiffs.

Barry Scott Richard, Deputy Atty. Gen., State of Florida, Tallahassee, Fla., for defendants.

## OPINION AND ORDER

HODGES, District Judge.

At the time this suit was filed the plaintiffs were members of the Florida Legislature and the Congress had just submitted for ratification by the state a proposed Twenty-Seventh Amendment to the Federal Constitution. Plaintiffs complained that legislative action on the proposed amendment was impeded by Article X, Section 1 of the Florida Constitution of 1968 (25 F.S.A. p. 729), and they sought a summary decree declaring that provision to be repugnant to Articles V and VI of the Constitution of the United States. The challenged section of the Florida Constitution prescribes:

"§ 1. Amendments to United States Constitution.

"The legislature shall not take action on any proposed amendment to the constitution of the United States unless a majority of the members thereof have been elected after the proposed amendment has been submitted for ratification."

On March 31, 1972, this Court entered an order requesting the Chief Judge of this Circuit to convene a three-judge court pursuant to 28 U.S.C.A. § 2284. Reference to that order will also provide a more detailed statement of the background of the case. Trombetta v. State of Florida, 339 F.Supp. 1359 (M.D.Fla. 1972). On April 10, 1972, Judge Brown designated a three-judge panel to hear and determine the action. Nevertheless, for the reasons expressed in a separate order *infra*, the panel has decided after oral argument and full consideration of the case that a three-judge court is unnecessary, and that the issues should be decided by the District Judge to whom the cause was originally assigned.

## I

The jurisdiction of the court is clear. 28 U.S.C.A. §§ 1343, 2201, 2202; 42 U.S.C.A. § 1983; and Articles V and VI of, and the Fourteenth Amendment to, the Constitution of the United States. The threshold questions of justiciability, standing to sue and mootness are more substantial, but none require dismissal.

■ The plaintiffs were members of the Florida Legislature and were bound by their oaths of office to support, protect and defend the Constitution of the United States as well as the Constitution of Florida.[1] Their membership in the legislature entailed a direct responsibility and involvement in the constitutional ratification process not shared by the citizenry or electors of the state at large. The very issue now presented to the Court, therefore, placed the plaintiffs on the horns of an unresolved constitutional dilemma giving them "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); Coleman v. Miller, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). It must also be recognized that an election has been held during the pendency of this action so that a question of mootness is presented. Where there is substantial likelihood that the question presented will recur, however, the issue remains justiciable and a declaratory judgment may be rendered to define the rights and obligations of the parties.[2]

"The problem is therefore 'capable of repetition, yet evading review,' Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310. The need for its resolution thus reflects a continuing controversy in the federal-state area . . ." Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). See also, Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

## II

Tracing the origin of Article X, Section 1 of the Florida Constitution is not only an interesting venture into national history, it also serves to clearly point the way to the only proper application of the Supreme Court decisions which control the constitutional issue.

During the Reconstruction Era following the Civil War the state governments within the Confederacy were subordinate to the War Department. These states were arranged in five military

---

1. Article II, Section 5(b) of the Florida Constitution of 1968.

2. In this instance, for example, three of the plaintiffs previously filed a similar suit in the Southern District of Florida during the recent pendency of the Twenty-Sixth Amendment before the legislatures for ratification or rejection. That suit was dismissed as moot when, in the meantime, the requisite number of states approved the Amendment. Trombetta et al. vs. The State of Florida, Case No. 71–1075 Civ. JE (S.D.Fla.1972). This action thus represents the second time in as many years that the ultimate issue has been brought to the Court and, absent a decision, it will arise again each time in the future that the Congress sees fit to propose a constitutional amendment to the legislature.

districts and all, except Tennessee, were placed under military rule.[3] In January, 1870, the Tennessee Legislature called a convention to draft a new state constitution. The result was a redraft of the state's existing constitution with certain changes suggested by recent events[4] which included, of course, the circumstances prevailing in the south at the time of the ratification of the Thirteenth, Fourteenth and Fifteenth Amendments. See Coleman v. Miller, supra. Thus, one of the additions to the Tennessee Constitution of 1870 was Article 2, Section 32, which provided as follows:

> "Sec. 32. Amendments to Constitution of United States.—No Convention or General Assembly of this State shall act upon any amendment of the Constitution of the United States proposed by Congress to the several States; unless such Convention or General Assembly shall have been elected after such amendment is submitted."

Shortly following Reconstruction the electorate of Florida adopted this state's Constitution of 1885. Article XVI, Section 19 of that document was identical to Article 2, Section 32 of the Tennessee Constitution, and there can be no doubt that the latter inspired the former. Article XVI, Section 19 of the Florida Constitution of 1885 thereafter remained in effect until 1968 when it was slightly revised and carried forward as Article X, Section 1 of the Florida Constitution of 1968, i. e., the provision now being considered.

### III

A determination of the case turns upon the application of two Supreme Court decisions, Hawke v. Smith, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871 (1920); and Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922).

In *Hawke* the plaintiff sought to enjoin the Ohio Secretary of State from preparing a ballot allowing the people to vote on the Eighteenth Amendment. The Ohio Constitution provided for a referendum on any action of the legislature ratifying a proposed amendment to the Federal Constitution. The Court held the Ohio Constitutional provision to be invalid, establishing the principle that the action of a state legislature in ratifying an amendment to the Federal Constitution is a purely Federal function under Article V transcending any limitation sought to be imposed by the people of a state through their own constitution.

If *Hawke* was the only expression of the Court on this subject I would have no difficulty whatever in distinguishing the decision on its facts as well as in principle. The Ohio Constitution patently attempted to remove its legislature as the agent of Ohio in the ratification process, and this was correctly observed to be in direct conflict with Article V. The Florida provision, however, leaves full authority in the legislature while safeguarding the rights of a constituency to express itself concerning so vital a matter as a change in the constitution. This, to me, is not only salutary but in complete harmony with Article V. While the legislature, and only the legislature, can perform the Federal function, it necessarily acts in such capacity as the agent of the people of the state; or, indeed, it might not act at all.[5]

Any effort to distinguish *Hawke* is rendered futile, however, by the Court's

---

3. See R. Henry, The Story of Reconstruction, at 219 (1963); E. McPherson, The United States During Reconstruction, at iii (1969).

4. See Henry, at 402.

5. The proposed child labor amendment of 1924, for example, may yet be outstanding since Congress imposed no time limit upon ratification. See, Coleman v. Miller, supra. The present Congressional practice of specifying a limitations period of seven years upon the ratification process is obviously intended to settle amendment questions, one way or another, by a day certain; but this too is entirely consistent with the deliberative consideration contemplated by the Florida Constitution in view of the length of time allowed.

578

decision two years later in *Leser*. Ratification of the Nineteenth, Women's Suffrage Amendment had been proclaimed on August 26, 1920. A suit was then brought in Maryland to disqualify two women registrants. The thrust of the action was a wholesale attack upon the validity of the ratification of the Amendment in several states. The opinion of the Court did not particularize these contentions or specifically identify the individual states involved. Rather, it summarily disposed of the issues as follows (258 U.S. at 136–137, 42 S.Ct. at 217):

> "The second contention is that in the Constitutions of several of the 36 states named in the proclamation of the Secretary of State there are provisions which render inoperative the alleged ratifications by their Legislatures. The argument is that by reason of these specific provisions the Legislatures were without power to ratify. But the function of a state Legislature in ratifying a proposed amendment to the federal Constitution, like the function of Congress in proposing the amendment, is a federal function derived from the federal Constitution; and it transcends any limitations sought to be imposed by the people of a state." [Citing *Hawke*]

Thus, the *Leser* opinion *per se* adds very little to the teaching of *Hawke*. Examination of the precise contentions presented to the Court, however, reveals that the ratification in Tennessee was a principal target in view of Article 2, Section 32 of the Tennessee Constitution of 1870 (See 66 L.Ed. at 507–508). In net effect, therefore, the *Leser* Court specifically extended and applied the principle of *Hawke* to the very provision now embodied in Article X, Section 1 of the Florida Constitution of 1968, and it goes without saying that this Court is bound by that decision.

 Article X, Section 1, of the Florida Constitution of 1968 is hereby declared to be unconstitutional and void.

## SUPPLEMENTAL ORDER

Before RONEY, Circuit Judge, and KRENTZMAN and HODGES, District Judges.

A three-judge court was convened in this case pursuant to 28 U.S.C.A. § 2284. Upon due consideration of the pleadings, briefs and oral arguments of the parties, the Court has determined that injunctive relief would not be warranted in this cause. Under these circumstances the three-judge court should be, and is hereby dissolved. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

The question of whether a decree confirming the Constitution of Article X, Section 1 of the Florida Constitution should be entered or whether other judicial relief short of injunctive relief should be given is left to the determination of the single-judge court.