ISABEL KIMBLE, BRUCE BLACKADAR, MARY FRAZ-ZINI, THEODORE OLESON, JR., AND MARJORIE DA COSTA EASTMAN, APPELLANTS, *v.* WILLIAM D. SWACKHAMER, SECRETARY OF STATE OF THE STATE OF NEVADA; AND LEGISLATIVE COMMISSION OF THE STATE OF NEVADA, INTERVENER, RESPONDENTS.

No. 10650

September 19, 1978                    584 P.2d 161

*Phyllis Halsey Atkins,* Reno, for Appellants.

*Robert List,* Attorney General, and *Donald Klasic,* Deputy Attorney General, Carson City, for Respondent Secretary of State.

*Frank W. Daykin,* Carson City, for Respondent Legislative Commission.

## OPINION

By the Court, THOMPSON, J.:

At issue is the constitutionality of chapter 174, 1977 Nev. Stats., which requires the submission of an advisory question to the registered voters of this state on the ratification of the proposed amendment to the Constitution of the United States commonly known as the equal rights amendment. It is asserted that the chapter violates article V of the federal constitution. The district court found no constitutional infirmity. For reasons hereafter expressed we agree with that court and, therefore, affirm the judgment entered below.

The advisory question to be presented at the 1978 general election is set out in section 4 of the chapter. It is:

"Do you recommend that the Nevada legislature ratify the following proposed amendment to the United States Constitution, commonly known as the equal rights amendment?

"Section 1.   Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex.

"Sec. 2.   The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

"Sec. 3.   This amendment shall take effect two years after the date of ratification.
"YES....     NO...."

Section 3 and section 5 of the chapter each expressly state that "the result of the voting on this question does not place any legal requirement on the legislature or any of its members." Section 6 directs the secretary of state to certify the result of the votes cast on the question to the president of the senate and the speaker of the assembly as the recommendation of the registered voters of the state. Thus, the legislature may vote for or against ratification, or refrain from voting on ratification at all, without regard to the advisory vote.

Article V of the federal constitution divests the people of authority to themselves ratify amendments to the federal constitution. Such power is limited to two methods, by action of the legislatures of three fourths of the states, or conventions in a like number of states. Hawke v. Smith, 253 U.S. 221 (1920).[1]

The appellants contend that chapter 174, in practical effect, grants the registered voters of Nevada the authority to ratify the proposed equal rights amendment to the federal constitution since we may presume that the legislature will be governed by the outcome of the advisory vote if, perchance, it recommends ratification. However, the cases upon which they mainly rely in presenting this contention are not supportive. Those cases are Hawke v. Smith, supra, and Leser v. Garnett, 258 U.S. 130 (1922).

Hawke held that there could be no referendum upon the decision of a state legislature to ratify or reject a proposed amendment to the federal constitution. And Leser merely held that the function of a state legislature in ratifying a proposed amendment to the federal constitution was a federal function transcending any limitations sought to be imposed by the people of the state.[2]

Chapter 174 does not concern a binding referendum, nor does it impose a limitation upon the legislature. As already noted, the legislature may vote for or against ratification, or refrain from voting on ratification at all, without regard to the advisory vote. The recommendation of the voters is advisory only. In re Estate of Hogan, 146 N.W.2d 257, 259 (Iowa 1966). To recommend does not mean to bind. Fletcher v. Porter, 21 Cal.Rptr. 452, 454 (Cal. D.C.A. 1962). Consequently, we find

---

[1]Article. V.: "The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of it's equal Suffrage in the Senate."

[2]Other cases dealing with a binding referendum on prior legislative action ratifying a proposed amendment to the federal constitution are: Barlotti v. Lyons, 189 P. 282 (Cal. 1920); In re Opinion of the Justices, 107 A. 673 (Me. 1919); Decher v. Vaughan, 177 N.W. 388 (Mich. 1920); Hatch v. Murray, 526 P.2d 1369 (Mont. 1974). In each instance, the court found a violation of article V of the federal constitution.

Limitations upon legislative power to ratify or refuse to ratify a proposed federal amendment likewise are in violation of article V. Trombetta v. State of Florida, 353 F.Supp. 575 (M.D.Fla. 1973); State ex rel. Tate v. Sevier, 62 S.W.2d 895 (Mo. 1933); Walker v. Dunn, 498 S.W.2d 102 (Tenn. 1972).

it wholly impossible to construe chapter 174 as a limitation on legislative power violative of article V of the federal constitution.[3] Rather, the chapter simply specifies a means by which to assist the legislature whether to consent or not to consent to the proposed amendment. The following words of Dyer v. Blair, 390 F.Supp. 1291, 1307 (N.D.Ill. 1975), are apposite to the case at hand:

> "Article V identifies the body—either a legislature or a convention—which must ratify a proposed amendment. The act of ratification is an expression of consent to the amendment by that body. By what means that body shall decide to consent or not to consent is a matter for that body to determine for itself. This conclusion is not inconsistent with the premise that the definition of the term "ratified" is a matter of federal law. The term merely requires that the decision to consent or not to consent to a proposed amendment be made by each legislature, or by each convention, in accordance with procedures which each such body shall prescribe."

Affirmed.

BATJER, C. J., and MOWBRAY and MANOUKIAN, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

I question whether the federal issue could, in any event, be considered correctly decided. Moreover, so far as I can perceive, my colleagues have not explained how it is proper under the Nevada Constitution for our Legislature—through an "Act" obviously intended neither to make nor to modify law, and therefore manifestly outside the Legislature's normal law-making function—to utilize this state's election ballots in ways not contemplated by Nevada's Constitution.

As the Legislative Counsel concedes, in Gibson v. Mason, 5 Nev. 283 (1869), this court declared the Legislature could not properly use the ballots to shift ultimate responsibility for enactment of a proposed law to the voters.[1] A fortiori, it would seem the Legislature, by Constitution solely a law-making body, may not pass a non-law requiring an "advisory" vote which binds neither the Legislature nor anyone else, and which

---

[3]One case, Opinion of the Justices, 160 N.E. 439 (Mass. 1928), may be read to support the proposition that a non-binding procedure is violative of article V. We reject that opinion as unsound, and not supported by the authorities relied upon by the Massachusetts court.

[1]"An act of the legislature made dependent upon their votes or approval would be utterly void—and so it has been frequently held." Id. at 293.

defers to a future day decisions on how the vote may be used to shift or dilute legislative responsibility.

In Opinion of the Justices Relative to Eighteenth Amendment, 160 N.E. 439 (Mass. 1928), the Supreme Judicial Court of Massachusetts treated a question identical in principle to the one before us, i.e. whether an attempt through initiative petition to order an advisory question onto the State election ballots was proper under the Massachusetts Constitution. Deciding such a directive was an improper exercise of law-making power, the Massachusetts court noted its view that "[t]he precise question is whether it is a 'law' . . ." Holding in the negative, that respected court noted that "the word 'law' imports a general rule of conduct," 160 N.E. at 440, which of course the "Act" of our Legislature, now under consideration, most certainly does not involve. The Court went on to note that the supposed law was

> . . . wanting in features essential to constitute its provisions a law within any permissible conception of the meaning of that word. Superficial appearances cannot clothe with the attributes of law something in substance vain and inoperative. The mandate to the secretary of the commonwealth in section 2 to tabulate the returns of the votes and to "transmit copies * * * to each Senator and Representative in Congress from this commonwealth" is subsidiary and incidental to the main purpose of the proposed law; it relates to a matter which standing alone possesses no legal force; it cannot convert into a law something in itself ineffectual.

160 N.E. at 440.

Ms. Atkins, counsel for the E.R.A. proponents, in effect contends this "advisory" referendum is not only unconstitutional on its face, but inherently unfair to historically disadvantaged and therefore relatively underfinanced persons, such as the proponents in this case arguably are. Ms. Atkins notes that rather than being able to concentrate their efforts merely on persuading the Nevada Legislature, as the U.S. Constitution would contemplate, E.R.A. proponents will now be forced to expend important financial resources attempting to win a totally non-binding victory in the November election—under penalty of having defeat used against them during the later, binding struggle in the Legislature.

Moreover, as Ms. Atkins points out, the E.R.A. proponents may well incur disadvantages from the "advisory" referendum—even if statewide vote totals show overall approval of the E.R.A. Election returns will be available district by district. Hence, arguably some key legislators might be persuaded by

‑the advisory vote to oppose the E.R.A., even if Ms. Atkins' clients succeed in generating general support for the amendment throughout Nevada.

Thus, Ms. Atkins argues in effect, by the improper use of the Nevada election process, the cost of the ratification process contemplated by the U.S. Constitution will be increased, its complexion will be changed, and uncontemplated complexities will be imposed. I agree.