CITY OF RENO, Appellant, *v.* CITIZENS FOR COLD SPRINGS; ANTHONY MIDMORE; AND JOAN LISCOM, Respondents.

No. 50301

July 29, 2010                                        236 P.3d 10

*John J. Kadlic*, City Attorney, and *Marilyn D. Craig*, Deputy City Attorney, Reno, for Appellant.

*John L. Marshall*, Reno, for Respondents.

*McDonald Carano Wilson LLP* and *Michael A.T. Pagni* and *Mark W. Dunagan*, Reno, for Amici Curiae.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider whether the City of Reno violated Nevada law by conditionally approving amendments to the Reno Master Plan prior to the Truckee Meadows Regional Planning Commission's decision that the proposed amendments conformed to the Truckee Meadows Regional Plan. We also consider whether

the City violated a former provision in the Reno Municipal Code (RMC) by failing to make a sufficient finding about plans for water services and infrastructure before passing a zoning ordinance that corresponded with the proposed master-plan amendments. We conclude that the City complied with Nevada law because the master-plan amendments only became effective after the Regional Planning Commission determined that the proposed amendments conformed to the regional plan. We further conclude that the City violated the RMC because the findings it made prior to approval of the zoning ordinance about planned water services and infrastructure deferred the subject to a later date and were too general in nature to satisfy the mandates of the code. Therefore, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

### I. *Passage of Resolution 6712 and Ordinance 5809*

Cold Springs is a predominately rural area located north of Reno. It is a closed hydrographic basin that traps water and sewer outflow within its confines. Because of the closed nature of Cold Springs' water services and infrastructure, there are limited water supplies and sewage disposal available to its citizens. In 2005, the City passed a zoning ordinance that annexed approximately 6,800 acres of undeveloped land in Cold Springs.[1] The City annexed this land because developers proposed substantial urbanization in the area, including 13.5 million square feet of new commercial space and 6,860 new residential units. After the annexation, Nevada's statutory scheme required the Reno Planning Commission and City Council to modify the City's master plan and zoning provisions before development could begin.

Pursuant to NRS 278.030(1), the governing entity of each Nevada city with a population of 25,000 people or more must create a planning commission. City planning commissions are responsible for drafting and adopting master plans. *Sustainable Growth v. Jumpers, LLC*, 122 Nev. 53, 62, 128 P.3d 452, 459 (2006) (citing NRS 278.150(1)-(2)). Master plans contain long-term, comprehensive guides for the orderly development and growth of an area. *Id.* (citing NRS 278.150(1)-(2)). Before adopting a substantial amendment to a master plan, the city planning commission must hold at least one public hearing after providing notice by publication of the hearing's time and place. NRS 278.210(1). Once the city planning commission adopts the master-plan amendments, the local governing body may adopt such

---

[1] This court considered issues surrounding the annexation of land in Cold Springs in the case of *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 218 P.3d 847 (2009).

amendments if they can be practically applied for the area's development. NRS 278.220(1). Before adopting any amendment, however, the governing body must hold a public hearing after providing notice by publication of the hearing's time and place. NRS 278.220(3).

When a governing body adopts an amendment to a master plan, it must also abide by the procedures set forth in NRS 278.0282. Subsection 1 of NRS 278.0282 states that "[b]efore the adoption or amendment of any master plan, . . . each governing body and any other affected entity shall submit the proposed plan or amendment to the regional planning commission." Once the governing body submits the proposed master-plan amendment, the regional planning commission shall "determine whether the proposed plan or amendment conforms with the comprehensive regional plan." NRS 278.0282(1). Regional plans set forth goals and policies for the physical development and orderly management of the regional area in question. NRS 278.0272(1)-(2).

Governing bodies may also enact zoning ordinances with a procedure similar to that used to adopt amendments to master plans. NRS 278.260(1) sets forth that local governing entities must provide for the manner in which zoning ordinances are amended. Under RMC section 2.100, a local committee must first consider a proposed ordinance and, after the city meets requirements for the notice and publication of the provision, the Reno City Council must either adopt or reject the proposed ordinance within 45 days after the publication. Any proposed zoning changes must also substantially conform to the applicable master plan. *Nova Horizon v. City Council, Reno,* 105 Nev. 92, 96, 769 P.2d 721, 723 (1989). Pursuant to NRS 278.0284, "[a]ny action of a local government relating to . . . zoning . . . must conform to the master plan of the local government. In adopting any ordinance or regulation relating to . . . zoning, . . . the local government shall make a specific finding that the ordinance conforms to the master plan." In addition, NRS 278.250(2) states that "zoning regulations must be adopted in accordance with the master plan for land use."

In this case, the Reno Planning Commission held a public hearing to discuss amendments to the Reno Master Plan and the passage of a corresponding zoning ordinance. The proposed zoning ordinance would rezone the subject property in Cold Springs from generally rural land-use designations to industrial, commercial, and urban residential classifications. The proposed master-plan amendments would alter the Reno Master Plan so that it was in agreement with the proposed zoning ordinance. The Reno Planning Commission then approved the master-plan amendments and corresponding zoning ordinance. When considering these provisions, it deferred issues about supplying the prospective development with water services and infrastructure to a later date.

After the Reno Planning Commission approved the proposed amendments and ordinance, the Reno City Council considered them at a public hearing. The City Council then conditionally approved the master-plan amendments in Resolution 6712, which would change the Reno Master Plan by altering the land-use designations for the subject property. The resolution stated that it would "become effective upon a determination of conformance by the Regional Planning Commission." Next, the City Council changed Cold Springs' rural zoning designations to primarily urban designations in Ordinance 5809. Although Ordinance 5809 originally stated that it would become effective several days after its adoption, the City Council amended the ordinance so that it would become effective upon the Regional Planning Commission's determination that the master-plan amendments conformed to the regional plan. When passing Resolution 6712 and Ordinance 5809, the City Council did not find that Cold Springs' existing water services and infrastructure were adequate to serve the potential growth on the property. Nor did it make a finding specifying plans to supply additional water services and infrastructure to the subject property to meet the anticipated demand caused by development.

Following the passage of these provisions, the City Council submitted the proposed master-plan amendments to the Regional Planning Commission at the Truckee Meadows Regional Planning Agency so that it could determine whether the amendments conformed to the Truckee Meadows Regional Plan. The Nevada Legislature created the Truckee Meadows Regional Planning Agency in 1989 to foster coordination between Reno, Sparks, and Washoe County. The agency is comprised of a director, staff, the Regional Planning Governing Board, and the Regional Planning Commission. The agency adopted the first Truckee Meadows Regional Plan in 1991. Then in 2002, it adopted a regional plan that created a streamlined, simplified process for coordinating land-use development in Reno, Sparks, and Washoe County. In this case, the Regional Planning Commission unanimously determined that the proposed amendments to the Reno Master Plan conformed to the Truckee Meadows Regional Plan. Upon the finding of conformance, both Resolution 6712 and Ordinance 5809 went into effect.

## II. *District court proceedings*

Respondents filed suit against the City in 2006. Respondents consist of citizens, taxpayers, residents, and property owners of the subject land in Cold Springs. They are concerned about the proposed urbanization and development in Cold Springs because this area has limited water supplies and infrastructure. Their complaint requested declaratory and injunctive relief, and petitioned for a

writ of mandamus. After the parties experienced confusion regarding the proper mechanism for respondents' challenge, respondents filed an amended complaint that petitioned for both a writ of mandamus and judicial review.

In the amended complaint, respondents alleged that the City erred by adopting Ordinance 5809 because this zoning ordinance did not conform to the existing master plan at the time of its passage and adoption. According to respondents, the City attempted to amend the existing master plan by adopting Resolution 6712, but it failed to properly enact the resolution because it did not obtain a determination from the Regional Planning Commission stating that the master-plan amendments conformed to the regional plan prior to the resolution's passage. Respondents also alleged that the City erred by adopting Ordinance 5809 because the City did not make a finding about plans for water services and infrastructure prior to the ordinance's passage, nor did the ordinance promote orderly development.

The district court considered respondents' arguments during a hearing. After the hearing, the district court ordered the City to set aside Ordinance 5809. The parties then agreed to submit a proposed amended order to the district court to clarify its findings. In the amended order, the district court concluded that ''the requirements of first obtaining an amendment to the Master Plan and having a plan to provide services are more than mere procedural guidelines.'' Although the district court did not order the City to set aside Resolution 6712, it partly based its decision to mandate that the City set aside Ordinance 5809 upon the premise that the City did not properly amend the Reno Master Plan before adopting Ordinance 5809. The district court also concluded that the City disregarded procedure in the RMC when adopting Ordinance 5809 because it did not make a finding regarding plans for the provision of services and infrastructure necessary due to the future development in Cold Springs. The City now appeals from the district court's amended order.

## DISCUSSION

### I. *Standard of review*

In this case, respondents filed a complaint in district court for declaratory and injunctive relief, and for a writ of mandamus. A writ of mandamus is a remedy that exists ''to compel the performance of an act which the law especially enjoins as a duty resulting from office.'' *Board of Comm'rs v. Dayton Dev. Co.*, 91 Nev. 71, 75, 530 P.2d 1187, 1189 (1975). This extraordinary

remedy can also correct a governing body's manifest abuse of discretion in zoning cases. *Id.*

After respondents filed their complaint, this court issued its decision in *Kay v. Nunez*, 122 Nev. 1100, 146 P.3d 801 (2006). In *Kay*, the appellant filed petitions in district court for a writ of mandamus and judicial review to contest a local government's zoning and land-use decision. *Id.* at 1103, 146 P.3d at 804. This court concluded in *Kay* that a petition for judicial review was the proper mechanism for seeking review of a local government's zoning and planning decision in district court. *Id.* at 1104-06, 146 P.3d at 804-05. The court arrived at this conclusion based on the express language in NRS 278.3195(4), which sets forth that a person who administratively appeals a zoning decision under the applicable ordinance to the governing board and is aggrieved by the board's decision may appeal by timely filing a petition for judicial review in district court. *Id.* at 1104-05, 146 P.3d at 804-05.

Given the ruling in *Kay*, respondents amended their complaint to petition for both a writ of mandamus and judicial review. After a hearing, the district court ordered the City to set aside Ordinance 5809. In its order, the district court noted that the parties initially disputed whether a petition for a writ of mandamus or for judicial review was the appropriate vehicle for respondents' challenge. The district court also noted that later on during the proceedings, the parties appeared to agree that the proper vehicle was a writ of mandamus. The City continues to argue on appeal that the proper vehicle for respondents' challenge was a writ of mandamus. According to the City, a petition for judicial review is improper in this case because the City's enactment of Ordinance 5809 was a legislative act that is not subject to NRS 278.3195(4). However, we conclude that the petition for judicial review was the proper mechanism.

The enactment of zoning ordinances and amendments by local municipal entities constitutes sound legislative action. *McKenzie v. Shelly*, 77 Nev. 237, 242, 362 P.2d 268, 270 (1961). Some courts do not extend judicial review to the legislative process of enacting zoning amendments. 4 Patricia E. Salkin, *American Law of Zoning* § 42:5 (5th ed. 2010). However, the procedural actions of municipal legislative entities may still be subject to judicial review. *Id.* In *City of Beechwood Village v. Council, Etc.*, 574 S.W.2d 322, 323 (Ky. Ct. App. 1978), the Court of Appeals of Kentucky reviewed an amendment to a zoning map adopted by a local legislative body. The court in *Beechwood Village* invalidated the zoning amendment because the local legislative body failed to make a suf-

ficient finding explaining why the amendment conformed to the community's comprehensive plan. *Id.* at 323-25.

Similarly, the Court of Appeals of New York concluded in *Voelckers v. Guelli*, 446 N.E.2d 764, 767-68 (N.Y. 1983), that courts could judicially review the voting procedures used by local town boards to enact zoning amendments. In *Voelckers*, respondents argued on appeal that the lower courts had exceeded their authority by reviewing a legislative action, meaning the town board's action related to a proposed zoning code amendment. *Id.* at 767. The court disagreed and concluded that "a determination of such a nature—addressing a question of procedure only, eschewing any intrusion into the substance of the matter being voted on—is within the scope of judicial authority." *Id.* at 768.

In this case, we consider two procedural issues raised by the parties: (1) whether the City complied with NRS 278.0282 when passing the amendments to the Reno Master Plan in Resolution 6712, and (2) whether the City complied with former RMC section 18.06.404(d)(1)(b) when rezoning the subject property in Ordinance 5809. Because these issues are procedural and do not require this court to consider the substance or content of the enactments, we conclude that a petition for judicial review was the proper vehicle for respondents' challenge. *See Voelckers*, 446 N.E.2d at 767-68.

When considering petitions for judicial review in zoning cases, both the district court and this court review the agency record to decide whether substantial evidence supports the governing body's findings. *Kay*, 122 Nev. at 1105, 146 P.3d at 805. Substantial evidence is that which a reasonable mind could accept as sufficient to support a conclusion. *State, Emp. Security v. Hilton Hotels*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986). This court will not substitute its judgment for that of a municipal entity if substantial evidence supports the entity's action. *McKenzie*, 77 Nev. at 240, 362 P.2d at 269.

The two issues on appeal also require this court to interpret NRS 278.0282 and former RMC section 18.06.404(d)(1)(b).[2] "Statutory construction is a question of law, which this court reviews de novo." *Kay*, 122 Nev. at 1104, 146 P.3d at 804. Courts also apply a de novo standard of review when interpreting municipal code

---

[2]The City amended RMC section 18.06.404 on September 9, 2009, after the district court issued its amended order in this case on June 5, 2008. Thus, we will analyze this matter in accordance with the version of RMC section 18.06.404 that was in effect on June 5, 2008.

provisions. *U.S. v. Iverson*, 162 F.3d 1015, 1019 (9th Cir. 1998); *Asphalt Specialt. v. City of Commerce City*, 218 P.3d 741, 745 (Colo. App. 2009). When the language in a provision is clear and unambiguous, this court gives "effect to that meaning and will not consider outside sources beyond that statute." *NAIW v. Nevada Self-Insurers Association*, 126 Nev. 74, 84, 225 P.3d 1265, 1271 (2010). If there is more than one reasonable interpretation of the statute, this court considers legislative intent and other similar statutory provisions when construing the statute's language. *Id.*

## II. *The City complied with NRS 278.0282 when passing Resolution 6712*

The City argues on appeal that it complied with Nevada law, specifically NRS 278.0282, when passing amendments to the Reno Master Plan in Resolution 6712. According to the City, it properly adopted Resolution 6712 because its language stated that the master-plan amendments would only become effective after the Regional Planning Commission determined that the proposed amendments conformed to the regional plan. Respondents argue that the City violated NRS 278.0282 because it adopted the master-plan amendments prior to the Regional Planning Commission's determination that the amendments conformed to the regional plan. We conclude that the City's argument has merit.

NRS 278.0282(1) states that "[b]efore the adoption or amendment of any master plan, . . . each governing body and any other affected entity shall submit the proposed plan or amendment to the regional planning commission." Once the governing body submits the proposed master-plan amendment, the Regional Planning Commission shall "determine whether the proposed plan or amendment conforms with the comprehensive regional plan." NRS 278.0282(1). If the commission concludes that the master-plan amendment does not conform to the regional plan, it must specify which parts of the amendment do not conform and explain its reasoning. *Id.*

In this case, the Reno City Council passed amendments that altered the land-use designations for Cold Springs in the Reno Master Plan. It conditionally approved these proposed amendments in Resolution 6712, before the Truckee Meadows Regional Planning Commission found that the amendments conformed to the Truckee Meadows Regional Plan. The City Council included a provision in Resolution 6712 that stated the amendments would only "become effective upon a determination of conformance by the Regional Planning Commission." After the City submitted the master-plan amendments to the Regional Planning Commission, the commission unanimously concluded that the proposed amendments conformed to the regional plan and the resolution became operative.

We conclude that the sequence of events used when passing Resolution 6712 complied with the procedures set forth in NRS 278.0282. Subsection 1 of NRS 278.0282 requires that a governing body submit "proposed" amendments to the Regional Planning Commission prior to the amendment of a master plan. The term "proposed" indicates that the Regional Planning Commission must review master-plan amendments before they are ratified and become effective.

Caselaw draws a distinction between proposed amendments and ratified or effective amendments. *See, e.g.*, *Kimble v. Swackhamer*, 94 Nev. 600, 602, 584 P.2d 161, 162 (1978) (the Legislature could "ratify or reject a proposed amendment to the federal constitution" (discussing *Hawke v. Smith*, 253 U.S. 221 (1920))); *Williams v. Griffin*, 91 Nev. 743, 745, 542 P.2d 732, 733 (1975) (agencies may refuse to issue permits when doing so would conflict with proposed ordinances that are not yet in effect); *Maragliano v. Land Use Bd.*, 957 A.2d 213, 215 (N.J. Super. Ct. App. Div. 2008) (if a governing body proposes to amend a zoning ordinance, planning boards should not grant development approvals until the amendment takes effect). Because the City added a provision to Resolution 6712 that prevented the resolution from becoming effective until the Regional Planning Commission determined that the proposed master-plan amendments conformed to the regional plan, we conclude that the City complied with the express language in NRS 278.0282 when adopting Resolution 6712.

III. *The City violated former RMC section 18.06.404(d)(1)(b) when passing Ordinance 5809*

The City argues that the district court erred when it ordered that Ordinance 5809 be set aside because the City complied with former RMC section 18.06.404(d)(1)(b) when passing the ordinance. According to the City, this municipal code provision did not require the local government to make a finding setting forth detailed plans about water services and infrastructure prior to the approval of Ordinance 5809. Respondents argue that the City failed to comply with former RMC section 18.06.404(d)(1)(b) when enacting Ordinance 5809 because it did not make a sufficient finding about the plans for water services and infrastructure.

A. *The requirements of former RMC section 18.06.404(d)(1)(b)*

Former RMC section 18.06.404(d)(1)(b) mandated that when approving a zoning-map amendment, the Reno Planning Commission and City Council must find that there is a plan to support proposed development with sufficient services and infrastructure. It stated the following:

In approving any zoning map amendment, the planning commission and city council shall find the following:

. . . .

b. The change in zoning represents orderly development of the city and there are, or are planned to be adequate services and infrastructure to support the proposed zoning change and existing uses in the area.

RMC § 18.06.404(d)(1)(b) (2008). Because this version of the code was in effect at the time when the district court issued its amended order, we analyze the appeal under former RMC section 18.06.404(d)(1)(b).[3]

In this case, the parties acknowledge that the existing water and sewer services in Cold Springs cannot support the proposed development and urbanization permitted by the change in zoning. Because Cold Springs' existing water and sewer services cannot support the proposed development, former RMC section 18.06.404(d)(1)(b) required the Reno Planning Commission and City Council to make a finding, when passing Ordinance 5809, regarding plans to supply adequate water services and infrastructure to support the proposed development. The City argues that it complied with this former code provision because it made findings which set forth that the details regarding the provision of water services and infrastructure would be established before development begins. According to the City, it was improper for the district court to require detailed plans about water services and infrastructure at the zoning and planning stage of the process.

We conclude that this is not a reasonable interpretation of former RMC section 18.06.404(d)(1)(b). Courts must construe ordinances in a manner that gives meaning to all of the terms and language. *Bd. of County Comm'rs v. CMC of Nevada*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). Courts "should read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation." *Id.* The City's interpretation that former RMC section 18.06.404(d)(1)(b) permits governing entities to defer findings or make broad conclusions about services and infrastructure would render the following phrase in the code to be meaningless:

---

[3]Similar to former RMC section 18.06.404(d)(1)(b), the current version of RMC section 18.06.404(d)(1) states that the Reno Planning Commission and City Council "shall make findings regarding the requirements of NRS 278.250(2), as applicable, and the proposed amendment's conformity to the City of Reno Master Plan." Pursuant to NRS 278.250(2), local governments must design zoning regulations to, among other things, "preserve the quality of air and water resources" and "develop a timely, orderly and efficient arrangement of transportation and public facilities and services."

"the planning commission and city council shall find . . . there are, or are planned to be adequate services and infrastructure to support the proposed zoning change and existing uses in the area." Also, deferring the requirement to make a finding about plans for adequate services and infrastructure could prevent governing entities from designing proper zoning regulations that promote the orderly development of an area.

In contrast, respondents in this case interpret former RMC section 18.06.404(d)(1)(b) as requiring local governments to make a finding about plans for adequate services and infrastructure prior to the adoption of amendments to the master plan. This constitutes a reasonable interpretation of the former code provision. Pursuant to this provision's plain language, governing entities must make a finding during the zoning and planning stage of development about how officials plan to meet the water and infrastructure demands generated by the proposed zoning change. The provision's clear and unambiguous language does not permit governing entities to merely defer findings regarding plans for water services and infrastructure to a later date or to make vague conclusions that fail to articulate even a general plan for the provision of water services and infrastructure.

According to amici curiae, actual plans for water services and infrastructure cannot be created before local governments enact applicable zoning ordinances. However, the express language in former RMC section 18.06.404(d)(1)(b) does not require local governments or developers to submit complete, all-inclusive development plans prior to the approval of new zoning ordinances. Such a requirement would be redundant because Nevada's statutory scheme already requires developers to submit detailed plans regarding water and sewer services during later stages in the development process. *See, e.g.*, NRS 278.335; NRS 278.372; NRS 278.377; NRS 278A.540. As set forth above, the provision's plain language is subject to only one reasonable interpretation: local government must make a finding about plans for adequate services and infrastructure prior to the adoption of amendments to the master plan. In this finding, local government must set forth an estimate of the water services and infrastructure required to serve the proposed development facilitated by the zoning amendment and must state how the governing entity plans to meet this demand.

B. *Substantial evidence does not show that the City made a sufficient finding about plans for services and infrastructure*

After reviewing the record in this case, we conclude that substantial evidence does not show that the City made a sufficient

finding regarding how officials plan to meet the water demands and infrastructure needs generated by the proposed development in Cold Springs. When approving Ordinance 5809, the evidence shows that the Reno Planning Commission stated: "As future development projects are brought forward, issues such as sanitary sewer, water service and other critical infrastructure needs will be addressed." In addition, the Reno City Council made the following statement: "[W]hile the details of the provision of water and sewer will be required when the development is proposed, there is infrastructure in place that could be expanded, such as an existing sewer plant, and a water purveyor called Utilities, Inc. Alternatively, new utilities could be built by the developer."

These statements do not satisfy the requirements of former RMC section 18.06.404(d)(1)(b) because they do not articulate even a general plan to meet the potential demands for water services and infrastructure generated by the zoning change. While the City is not required to set forth detailed, all-inclusive development plans for water services and infrastructure, former RMC section 18.06.404(d)(1)(b) did require something more than the deferral of the issue or broad, evasive conclusions about how officials can build or expand utilities if necessary. *See Annapolis Market v. Parker*, 802 A.2d 1029, 1045-46 (Md. 2002) (findings of fact should be meaningful and should not merely set forth broad con-.clusions, make boilerplate resolutions, or defer issues to a later date). The parties in this case agree that the existing water services and infrastructure cannot support the potential development in Cold Springs, and merely deferring the subject or broadly concluding that a developer could build new utilities if necessary oversimplifies complex water-supply issues. Because the City did not satisfy the applicable provision of the RMC, we conclude that the district court did not err by ordering the City to set aside Ordinance 5809.

## CONCLUSION

We conclude that the City did not violate NRS 278.0282 by conditionally approving amendments to the Reno Master Plan prior to submitting the amendments to the Regional Planning Commission for review. The City complied with NRS 278.0282 because Resolution 6712 provided that the proposed master-plan amendments would become effective after the Regional Planning Commission determined that they conformed to the regional plan. We further conclude that the City violated former RMC section 18.06.404(d)(1)(b) because there is no substantial evidence showing that it made an adequate finding about planned water services and infrastructure before passing Ordinance 5809. According-

ly, we reverse the district court's finding that the City failed to properly amend the Reno Master Plan and affirm the district court's conclusion that the City violated former RMC section 18.06.404(d)(1)(b).

PARRAGUIRRE, C.J., and HARDESTY, DOUGLAS, CHERRY, SAITTA, and PICKERING, JJ., concur.