**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1171
_____

EUGENE MARTIN LAVERGNE,
                                        Appellant
                          v.

JOHN BRYSON, in his official capacity as the Secretary
of the United States Department of Commerce;
JOHN GROVER, in his official capacity as the Director
of the United States Census Bureau;
KAREN L. HAAS, in her official capacity as the Clerk
of the United States House of Representatives;
JOHN BOEHNER, in his official capacity as the Speaker
of the United States House of Representatives;
DANIEL INOUYE, in his official capacity as the President Pro Tempore
of the United States Senate;
JOSEPH BIDEN; in his official capacity as the President of the Senate;
DAVID FERRIERO, in his official capacity as the Archivist of the United States
of America
_____

On Appeal from the United States District Court
for the District of  New Jersey
(No. 3-11-cv-07117)
District Judge: The Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 14, 2012

Before: SMITH and CHAGARES, <u>Circuit</u> <u>Judges</u>,
and ROSENTHAL, <u>District</u> <u>Judge</u><sup>*</sup>

_____

<sup>*</sup> The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

_____

OPINION

_____

PER CURIAM

Eugene Martin LaVergne, proceeding pro se,[1] appeals an order of the United States District Court for the District of New Jersey denying his request to convene a three-judge panel under 28 U.S.C. § 2284 and dismissing his complaint.  We summarily affirm.  See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

I.

LaVergne, a New Jersey citizen and registered voter, alleges in this suit that the method of congressional apportionment under 2 U.S.C. § 2a is unconstitutional. LaVergne asserts that the method violates (1) separation of powers, (2) the nondelegation doctrine, (3) the principle of "one person, one vote," and (4) "Article the First," an amendment to the United States Constitution proposed in 1789 that LaVergne asserts was ratified and is part of the Constitution.  LaVergne sought a declaratory judgment and an injunction ordering the leaders of Congress to enact an apportionment plan consistent with Article the First's ratio of one member of Congress per 50,000 citizens and ordering the Vice-President of the

_____

[1] Although LaVergne is pro se, he received his license to practice law in New Jersey in 1990.  His license

2

United States to count 15 electoral votes for New Jersey in the 2012 presidential election. The relief LaVergne sought would expand the House of Representatives from the 435-member size that has been statutorily set since the 1910s to over 6,160 members.

On December 16, 2011, the District Court on its own denied LaVergne's application for a show-cause order and his request for a three-judge panel, and dismissed the case. LaVergne timely appealed. In this court, LaVergne moved for a preliminary injunction, an expedited appeal, and an expedited initial en banc review or panel review. This court denied the motions.

## II.

We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order dismissing the complaint is plenary. Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225, 230 (3d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). We may summarily affirm if an appeal presents no substantial question. 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6.

## III.

was temporarily suspended in January 2011and indefinitely suspended by the New Jersey Supreme Court in July 2011. *In re LaVergne*, 21 A.3d 1181 (N.J. 2011).

This appeal presents two threshold issues: standing and justiciability. The District Court concluded that LaVergne lacked standing because, among other reasons, he did not suffer the injury he complained about. The District Court concluded that, if there was an injury, it was only to certain government officials, such as the governor of New Jersey, who is responsible for implementing redistricting under § 2a; New Jersey members of the House of Representatives, who could lose their congressional seats as a result of redistricting; or certain presidential candidates, who would want New Jersey to have a larger number of electoral votes. (See A5). LaVergne disagrees with that conclusion, relying on Department of Commerce v. U.S. House of Representatives, 525 U.S. 316 (1999). In that case, the Supreme Court held that state voters' "expected loss of a Representative to the United States Congress" based on redistricting ordered under § 2a "undoubtedly satisfies the injury-in-fact requirement of Article III standing." Id. at 331. But in that case, statistical evidence showed that the plaintiffs' votes would be diluted through the loss of a congressional seat to another state. See id. at 331–34; see also Schaffer v. Clinton, 240 F.3d 878, 885 (10th Cir. 2001) (interpreting House of Representatives). Here, by contrast, the relief LaVergne seeks would result in every state, based on its population, gaining congressional seats under Article the First. The result would be an increase for each state in the same proportion as the present method produces. If there will be "dilution" to

4

LaVergne's vote when New Jersey is redistricted using the § 2a apportionment method, LaVergne's proposed solution would neither affect it nor change the size of New Jersey's congressional delegation relative to the size of other states' delegations.

In addition to this problem, LaVergne at most alleges "a type of institutional injury"—an allegedly unconstitutionally low number of representatives—"which necessarily damages" all United States voters "equally." Raines v. Byrd, 521 U.S. 811, 821 (1997); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 573–74 (1992) (explaining that the Supreme Court has "consistently held that a plaintiff . . . seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy"). He "has not alleged a sufficiently personal injury to establish standing[.]" Schaffer, 240 F.3d at 885 (citing Raines, 521 U.S. at 821). Cf. also Clemons v. U.S. Dep't of Commerce, 131 S. Ct. 821 (2010) (summarily ordering voters' constitutional challenge to § 2a dismissed for lack of jurisdiction).

LaVergne's claims also fail on other grounds, including lack of justiciability. LaVergne's constitutional challenge to § 2a is primarily based on his argument that the apportionment method violates Article the First. He alleges that this proposed constitutional amendment was ratified by the states in November 1791 or June 1792. Putting aside the considerable factual and historical problems with his

5

argument, "[t]he issue of whether a constitutional amendment has been properly ratified is a political question." United States v. McDonald, 919 F.2d 146, 1990 WL 186103 (table), at *3 (9th Cir. 1990) (per curiam) (citing Coleman v. Miller, 307 U.S. 433, 450 (1939)). In Coleman, the Supreme Court held that "the question of the efficacy of ratifications by state legislatures . . . should be regarded as a political question pertaining to the political departments, with the ultimate authority in the Congress in the exercise of its control over the promulgation of the adoption of the amendment." 307 U.S. at 450. See also Luther v. Borden, 48 U.S. (7 How.) 1, 39 (1849) (holding that "the political department has always determined whether the proposed constitution or amendment was ratified or not by the people of the State, and the judicial power has followed its decision"); United States v. Foster, 789 F.2d 457, 463 n.6 (7th Cir. 1986) (holding that the issue of "the validity of an amendment's ratification [is] a non-justiciable political question" and citing, among other cases, Leser v. Garnett, 258 U.S. 130, 137 (1922), and Coleman, 307 U.S. at 450).

LaVergne also argues that the § 2a apportionment method violates the nondelegation doctrine and separation of powers. To the extent that these arguments present justiciable questions,[2] they fail on the merits. As to the first

---

[2] See U.S. Dep't of Commerce v. Montana, 503 U.S. 442, 456–59 (1992) (rejecting the government's contention that a constitutional challenge to § 2a presented a nonjusticiable question because the challenge was to whether "specific congressional action"—the enactment of § 2a—violated constitutional principles); but cf. Clemons, 131 S. Ct. 821 (summarily ordering that voters' constitutional challenge to § 2a—which the three-judge district court had determined was justiciable—be dismissed for lack of

argument, the Supreme Court has recognized that "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." United States v. Amirnazmi, 645 F.3d 564, 575 (3d Cir. 2011) (quoting Mistretta v. United States, 488 U.S. 361, 372 (1989)). Congress may "endow a coordinate branch of government with a measure of discretion" if the delegation includes "'an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" Id. (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)). Section 2a clearly contains an intelligible principle to guide the exercise of delegated authority: "the method of equal proportions," which is automatic in character and which provides "procedural and substantive rules that are consistently applied year after year[.]" Montana, 503 U.S. at 465. LaVergne's nondelegation argument is meritless.

LaVergne's separation-of-powers argument similarly fails. The Supreme Court's "separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch." Freytag v. Comm'r, 501 U.S. 868, 878 (1991). Congress acted within its authority by delegating the ministerial tasks of implementing the method of equal proportions, for redistricting, to the Department of Commerce and its employees. Cf. also

jurisdiction).

7

Montana, 503 U.S. at 465 (holding, with regard to § 2a, that there is "no constitutional obstacle preventing Congress from adopting such a sensible procedure").

Finally, LaVergne's appeal of the District Court's order denying his request to convene a three-judge panel is limited to passing references to that issue. (See Opening Br. at 5, 6 n.1, 9, 29–30). Such cursory presentation waives the issue on appeal. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 202–03 (3d Cir. 2004) ("We have held on numerous occasions that an issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (internal quotation marks and alterations omitted)); John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (Alito, J.) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). Moreover, LaVergne does not seek reversal on this basis, or remand, but rather states that this three-judge panel's review of his claims suffices. (Opening Br. at 30).

## IV.

This appeal does not raise a substantial question. We summarily affirm the judgment of the District Court.